(No. 6161. July 9, 1935.)

VILLAGE OF HEYBURN, IDAHO, a Municipal Corporation, Respondent, v. SECURITY SAVINGS & TRUST COMPANY, a Corporation, Appellant.

[49 Pac. (2d) 258.]

Hugh A. Baker, for Appellant.

S. T. Lowe, for Respondent.

734

Chapman & Chapman, *Amicus Curiae,* filed brief on petition for rehearing.

AILSHIE, J.—The Village of Heyburn, respondent, commenced this action against Security Savings & Trust Company, appellant, the owner and holder for collection of nine funding bonds of $500 each, aggregating $4,500, which had been issued by respondent June 1, 1922. By such action the village sought to have the bonds canceled and adjudged and decreed void.

On June 1, 1922, the village officers adopted an ordinance (No. 31) providing for the issuance of these bonds "for the purpose of funding a like amount of the outstanding warrant indebtedness of said village." In pursuance of this ordinance the bonds were subsequently issued and sold to five individual purchasers through the agency of a Portland brokerage firm. Some interest coupons were thereafter paid and finally the village refused to pay any further coupons, asserting the invalidity of the bond issue. The purchasers assigned the bonds, together with unpaid coupons, to the appellant herein and it instituted an action on June 26, 1928, against the village to recover the amounts then due on unpaid coupons. In that action the jury returned a general verdict for the village. Thereafter and prior to the entry of judgment, but after the entry of the verdict, the village instituted the present action, praying for a cancelation of the bonds, pleading the facts which it claimed rendered the bonds void and also the previous action against the village and the verdict rendered therein. After the entry of the judgment on the verdict and prior to the trial of the present case the village filed a supplemental complaint, setting up the judgment which had been entered in the former case and alleging that:

"The said judgment has never been vacated, modified or appealed from and is now in full force and effect. That the same constituted an adjudication that the said bonds are illegal and unlawful and unenforceable . . . . and that the said defendant (appellant herein) is thereby estopped

from asserting or claiming any defense to the right of the plaintiff to have the said bonds, together with the coupons thereon canceled.''

The village also alleged that the bonds incurred an indebtedness exceeding the income and revenue of the village for the year in which they were issued; that they were issued without the assent of two-thirds of the qualified electors voting at an election held for that purpose; that the indebtedness represented by the bonds, with the other outstanding bonds of the village, exceeded in the aggregate ten per cent of the assessed full cash valuation of all the property within the village and that the bonds' were issued for the payment of illegal warrants and not for the purpose of paying any valid outstanding indebtedness of the village, and that the bonds were not in the hands of or owned by an innocent purchaser, and' that the appellant was not a holder in due course.

The appellant herein answered the complaint and added a further answer ''by way of affirmative defense'' to plaintiff's cause of action and thereupon set out the warrant and other indebtedness of the village as the same existed at the time of the issuance of these bonds and the claim of the village that the bond issue was unlawful and void because it exceeded the income and revenue of the village for the year in which the bonds were issued; and that they were issued without the assent of two-thirds of the qualified electors voting therefor and that they, together with other outstanding indebtedness, exceeded in the aggregate ten per cent of the full cash value of the real estate within the village; and further that they were issued for payment of illegal warrants, etc.

This present case was thereupon tried to the court and findings of fact, conclusions of law and judgment were thereupon entered in favor of the village, from which the defendant prosecuted this appeal.

Appellant has assigned a large number of errors but in view of their nature and the statement made in opening argument of appellant's brief, we do not think it will be

necessary to consider the assignments separately as we feel that the answer to one of the propositions advanced will dispose of the case. The statement in appellant's brief to which we have just referred is as follows:

"By its complaint the village grounded its right to decree canceling the bonds, relieving it from all obligation to make payment upon: (1) The assertion that the judgment entered in the action brought upon the coupons, wherein the parties hereto appeared in converse order, amounted to an adjudication of all questions involved; and (2) invalidity independently pleaded in that: (a) the bonds incurred an indebtedness exceeding the income and revenue for that year without the approval of the voters, (b) that the bonds increased the bonded debt to a total exceeding 10 per cent of the assessed valuation of property, and (c) that the bonds were issued for the payment of illegal and not for the payment of any valid warrants. The village alleged the bonds were not in the hands of a holder in due course.

"Thus by the complaint and responsive answer the following issues were presented: 1. Whether the purchasers were holders in due course; 2. If not, whether the bonds were invalid for the reasons pleaded; and 3, the efficacy of the judgment in the former suit as an adjudication of the two questions just stated."

When the trial court in this case came to make up his findings of fact and conclusions of law he reached the conclusion that all the issues involved in this action were involved in the former action and were judicially determined in the former action in favor of the respondent, the village, and against appellant; that the judgment made and entered in the former action constitutes *res judicata* of all the issues involved in this action and is, and constitutes, an estoppel by judgment against the appellant to deny or refute any of the issues that were made or considered in the former action. The court likewise concluded that the judgment in the former action constituted an adjudication that the bonds of respondent were void and unenforceable and that the purchasers and holders thereof were not holders in due course.

■ ■ The state of this case renders it necessary for us to first determine whether or not the case prosecuted by the appellant against the respondent for collection of the amount due on the coupons is *res judicata* of all the matters and issues involved in this case. For the purpose of ascertaining the rule of *res judicata* or estoppel by judgment applicable to this case, we should be guided by the rule as announced in previous decisions of this court. In *Elliott v. Porter*, 6 Ida. 684, 59 Pac. 360, this court speaking through Chief Justice Huston, announced the rule as to estoppel by judgment, which has been continuously followed in this state for over a third of a century. It was stated as follows:

"All of the issues passed upon by the probate court were fairly within the pleadings. No appeal was ever taken from the judgment of the probate court. Its judgment settled every question involved in the case before us. We think the law governing this case is properly and fully declared in *Marsh v. Pier*, 4 Rawle, 273, 26 Am. Dec. 131, as follows: 'A judgment of a proper court, being a sentence or conclusion of the law upon the facts contained within the record, puts an end to all further litigation on account of the same matter, and becomes the law of the case, which cannot be changed or altered, even by the consent of the parties, and it is not only binding upon them, but upon the courts and juries, ever afterward, as long as it shall remain in force and unreversed.' And the court adds in the same case: 'A contrary doctrine, as it seems to me, subjects the public peace and quiet to the will or neglect of individuals, and prefers the gratification of the litigious disposition on the part of suitors to the preservation of the public tranquility and happiness.' "

In *Joyce v. Murphy Land etc. Co.*, 35 Ida. 549, 208 Pac. 241, the rule was reiterated as follows:

"We think the correct rule to be that in an action between the same parties upon the same claim or demand, the former adjudication concludes parties and privies not only as to every matter offered and received to sustain or

defeat the claim but also as to every matter which might and should have been litigated in the first suit. (24 Am. & Eng. Ency. of Law, 2d ed., p. 714; *Shields v. Johnson*, 12 Ida. 329, 85 Pac. 972; *King v. Co-operative Sav. etc. Assn.*, 6 Ida. 760, 59 Pac. 557.)''

The same rule has been repeatedly followed by this court; it was quoted and reaffirmed in *South Boise Water Co. v. McDonald*, 50 Ida. 409, 296 Pac. 591, wherein previous cases are cited.

 We are satisfied with the rule as announced by this court in the above cited cases and will not pause to consider what other courts have held on the subject, and we shall now consider such of the record as may seem important for the purpose of determining whether or not the record of the former case brings the issues in the present case within the purview of the rule as above stated. We find that the parties in the former and present suits are identical. The former was an action at law brought by the holder of the bonds to recover the amount due and unpaid on the interest coupons. The present action is prosecuted by the village against the holder of the bonds from which the coupons were taken, seeking to obtain a decree of the court canceling both the bonds and the unpaid coupons. In the former action the jury and court decided that the bonds were illegally issued and were void and that the coupons were uncollectible. In the present case the city seeks to have the bonds canceled because void. There is really no contention made but that the subject matter is the same in both actions but it is contended by appellant that the case is taken out of the rule *res judicata* by reason of the different procedure that has been resorted to in this case. In other words, that, since the village has invoked the equity side of the court for a cancelation of the bonds, it has lost the benefit of the plea of *res judicata* to the extent that it cannot have any affirmative decree of cancelation without doing equity, which appellant asserts would be to tender back the amount of money that the purchasers paid for the

bonds, in so far as it can actually be traced into lawful and legitimate expenditures made by the village.

In order that there may be no misapprehension as to just what occurred in the original action and what issues were presented, discussed and passed upon, resort must be had to the record of the first case which was introduced upon the trial and is a part of the record here. The complaint contained the following allegations *inter alia:*

"That on the 1st day of June, 1922, the defendant, at Heyburn, Idaho, made and issued its nine certain funding bonds of the denomination of $500 each, numbered consecutively from 1 to 9, both inclusive, dated on said day, whereby for value received it promised to pay to the bearers the sum of $4,500 in lawful money of the United States of America, on the first day of June, A. D. 1942, with interest thereon at the rate of 6% per annum, payable semi-annually on the first day of January and the first day of July in each year, beginning July 1, 1922, at the office of the Village Treasurer in Heyburn, Idaho, or at the American Exchange National Bank in the City and State of New York, at the option of the holder, according to divers coupons thereto attached, numbered consecutively from 1 to 40, both inclusive, on each of said bonds, a copy of which said coupons (except Coupons #1 and #40 and except as to number and due date) is in words and figures as follows:

"That as and when the coupons attached to said bonds became due and payable the same were presented at the place of payment, to-wit: the office of the Village Treasurer in Heyburn, Idaho, and payment demanded, but payment of coupons numbered 4, attached to bonds numbered 1, 7 and 8, as aforesaid, and coupons numbered 3, attached to bonds numbered 2, 3, 4, 5, 6 and 9, as aforesaid, was and still is refused, and the said coupons and bonds and the indebtedness represented by them were then and ever since have been repudiated by the defendant on the alleged ground that said bonds and coupons are null and void."

The answer of the village denied most of the allegations of the complaint and alleged affirmatively as follows:

"That if any funding bonds were issued or attempted to be issued by this defendant or any board of trustees of this defendant, the said bonds were not issued in accordance with law, and were not issued to provide for funding, refunding, purchase or redemption of outstanding indebtedness of the Village of Heyburn; that if any funding bonds were issued, the same were issued for the purpose of funding, refunding, purchase or redemption of warrants that were illegally and unlawfully issued by the said Village of Heyburn, and that the said warrants so purported to be funded were not legal or valid obligations of the said village.

"That at the time of the issuance of said bonds, if any bonds were issued, the same constituted incurring additional liability of the said Village of Heyburn, and increased the indebtedness of said village, and the same were issued without submitting the question of issuing the said bonds or incurring said indebtedness, to the qualified electors of the said Village of Heyburn. That the indebtedness incurred thereby, if any indebtedness was incurred, exceeded the income and revenue provided for the Village of Heyburn for the year in which the said bonds are alleged to have been issued.

"That if the said bonds were issued, or attempted to be issued by said Village of Heyburn, as alleged in the complaint of the plaintiff, the same were not sold by the said Village in accordance with the provisions of the statutes of the State of Idaho, for their par value, but were sold for less than their par value, and the said village did not receive for the same the par value of the bonds alleged to have been issued and sold."

The instructions given by the court to the jury in that case, 42 in number, comprising some 45 typewritten pages, cover every issue that was either alleged or inferable from the pleadings, and consequently all the issues that have been tendered or discussed in the present case. For the purpose of illustrating and showing that every issue that arises or has been discussed here was presented to the jury in the

first case, we are setting out Instructions 4, 8, 9, 19, 20, 29 and 30 in the footnote. We are not concerned here with

### Instruction No. 4.

"It is claimed by the defendant that there is a defect in the issuance of the said bonds and coupons in that the defendant did not sell said bonds for par, and further that the said bonds being funding bonds or bonds issued for the paying of outstanding obligations that they are void for the reason that the defendant claims they increased the indebtedness of the city and for the further reason that some of the indebtedness taken up by said bonds was illegal and void, and that said bonds were illegal and void for other reasons set out in instruction number one herein. I instruct you as a matter of law that these defenses are not maintainable in this action if you find under all the evidence that the plaintiff had no actual knowledge of any alleged defects or infirmities existing or claimed by the defendant to exist at the time it became the owner and holder of said bonds, or had knowledge of such facts that its action in taking the instruments amounted to bad faith. In connection with this instruction you are instructed that the plaintiff is merely the holder for the purpose of collection and that in determining this question you will apply the same rule to the actual owners of the bonds who have made an assignment of their bonds and coupons to the plaintiff for the sole purpose of bringing this action."

### Instruction No. 8.

"Some contention has been raised in this case relative to filing or recording of such bonds with the county recorder. I instruct you as a matter of law that there is no law in this state requiring bonds of the character in controversy here to be recorded with the county recorder, but there is a statute requiring the treasurer of a city to file a list of bonds with the county recorder advising him of the outstanding obligations of the city particularly describing the bonds by number, amount, rate of interest, and due date, but this statute has nothing to do with the validity of the bonds. It is a misdemeanor for the officials of a village to fail to give such information to the county recorder, but it does not vitiate or in any sense invalidate the bonds if the village treasurer fails to properly discharge his duties. You are, therefore, instructed to disregard any evidence or statements you have heard during this trial on this phase of the case, because such facts would have nothing to do with plaintiff's right to recover in this action. There are two questions for you to determine in this case:

"(1) Whether or not there were defects in the proceedings had in the issuance of the bonds which would render them invalid, or create a defect in the title thereto.

"(2) Whether or not the plaintiff when it purchased said bonds had actual knowledge of such defects, if any, or knowledge of such facts that its acts in taking the bonds amounted to bad faith.

"If you find that defects in the proceedings render the bonds invalid or any defects of the title thereto, your verdict will be nevertheless for the plaintiff unless you further find that plaintiff had actual knowledge of such defects or knowledge of such facts that its acts in taking the bonds amounted to bad faith. In other words, you must be satisfied by the evidence as herein elsewhere defined that both of the above questions are answered in the affirmative before you can find for the defendant."

### Instruction No. 9.

"The bonds in controversy are funding bonds and the village of Heyburn had a right under the statutes of this state to issue funding bonds without a vote of the people; hence there is no merit in the contention made by the defendant that the bonds are void because they were issued by the trustees of the defendant village without a vote of the people, unless you also find in this connection that said funding bonds so issued created an additional debt to the village."

### Instruction No. 19.

"The court instructs the jury that section 3 of article 8 of the Constitution of the State of Idaho provides:

" 'Limitations on county and municipal indebtedness. No county, town, township, board of education or school district, or other subdivision of the state shall incur any indebtedness, or liability in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose, nor unless, before or at the time of incurring such indebtedness, provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from the time of contracting the same. Any indebtedness, or liability incurred contrary to this provision shall be void: PROVIDED, That this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state.' "

### Instruction No. 20.

"The court instructs the jury that Section 4109 of the Compiled Statutes of Idaho (I. C. A., Sec. 49-2401), in part provides:

" 'Every municipal corporation incorporated under the laws of the territory of Idaho or of the State of Idaho, shall have power and authority to issue municipal coupon bonds not to exceed at any time in the aggregate 10 per cent of the assessed full cash valuation of the real

estate and personal property in said municipal corporation, according to the assessment of the preceding year, for any or all of the purposes specified in subdivisions 1 to 8, inclusive, as follows: . . . .

" '3. To provide for the funding, refunding, purchase and redemption of the outstanding indebtedness of such municipal corporation. Bonds may be issued under this section for the purpose of funding, refunding, purchase or redemption of the outstanding indebtedness of any such municipal corporation when the same can be done to the profit and benefit of such municipal corporation, and without incurring any additional liability, without the submission of the question of issuance of such bonds to the electors of the municipal corporation.' "

### Instruction No. 29.

"You are further instructed, gentlemen of the jury, that the board of trustees of the Village of Heyburn had no authority to issue warrants for the purpose of taking up, paying off or discharging other warrants, and if you find from the evidence that the board of trustees of the Village of Heyburn did at any time issue warrants for the purpose of taking up other warrants, and such warrants so issued were included as a part of the funding bond, then you are instructed, as a matter of law, that the said bonds increased the indebtedness of the Village of Heyburn and under the provisions of the Constitution of the State of Idaho, would be void, unless you find that the plaintiff is a holder in due course, as elsewhere explained in these instructions."

### Instruction No. 30.

"The court instructs the jury that the power of a municipal corporation to issue bonds depends upon a grant of authority from the legislature and while a municipality has discretion to issue such bonds as will best accomplish the general object to secure which their issue was authorized, yet the legislature in granting authority therefor may impose such conditions as it may choose, and unless the conditions are complied with the issue is unauthorized and the bonds are invalid. If you find from the evidence in this case that the original or invalid warrants were funded by this bond, then you are instructed as a matter of law, that the bonds were not issued in accordance with the provisions of the statute, and the same are void, unless you find from all of the evidence that the plaintiff is a holder in due course."

the question as to whether the instructions were all correct statements of the law or contained contradictions or misstatements of the law. If any error was committed in that respect or in any other respect on that trial, the party against whom it was committed had a right of review by appeal to this court. No appeal was taken and the judg-

ment was allowed to become final. So we must accept the judgment in the first case as a final judgment and the law of the case.

From these instructions it will be seen that the jury was advised as to the law and their duty bearing upon the validity or invalidity of the bond issue as it was affected by the debt limitation section of the constitution and statute, by the property valuation limitation and also as to whether the bonds were issued in payment of pre-existing warrant indebtedness or were the creation of a new debt.

It was not only the privilege but the duty of the holder of these bonds at the trial for collection of the coupons to present all its evidence and every reason existing that would justify or compel a verdict and judgment in its favor. The allegations of the complaint and the denials and affirmative allegations of the answer tendered issues which rendered admissible any and all possible evidence bearing on the validity of these bonds and the instructions of the court verify the contention that every defense here presented or mooted was given to the jury by the court. It is indisputable that the jury found some or all of the defenses true and that by their verdict they found that the bonds created *no debt or liability* against the village. The finality of that judgment and its effect as *res judicata* in this case is in no respect escapable or lessened by reason of the adoption of a different form of action or a plea for equitable relief. One form of action is as conclusive on the parties as any other if it involves the same state of facts. (*Lawrence v. Corbeille,* 32 Ida. 114, 178 Pac. 834; *Hilton v. Stewart,* 15 Ida. 150, 96 Pac. 579, 128 Am. St. 48.)

No different fact whatever is in issue in this case from what was in issue in the former case. The difference exists only in the prayers of the respective complaints and answers and in that respect no substantial difference exists. In the former case plaintiff asked for judgment for the amount of the past due interest coupons and for general relief; in the present suit the *same party as defendant* "prays that the plaintiff take nothing by its complaint on file herein

and that the same be dismissed, for costs of suit and for such other and further relief as may be just and equitable.'' The defendant (the village) in the former case prayed that plaintiff's action be dismissed and ''this defendant wholly relieved and discharged therefrom, .... for such other and further relief as to the court may seem meet and proper.'' In the present case the same party (the village), as plaintiff, prays for a decree adjudging the bonds and remaining coupons void and for their cancelation and for general relief.

The contention made by appellant that these were mere funding bonds and did not increase the municipal debt liability within the constitutional inhibition (Sec. 3, art. 8, Const., quoted in footnote, *ante*, p. 743) as construed by this court in *Butler v. City of Lewsiton*, 11 Ida. 393, 83 Pac. 234, *Veatch v. City of Moscow*, 18 Ida. 313, 109 Pac. 722, 21 Ann. Cas. 1332, and *Sebern v. Cobb*, 41 Ida. 386, 238 Pac. 1023, is effectually and legally answered by reference to the instructions and verdict in the former case. By Instruction No. 9 (footnote, *ante*, p. 743) the court told the jury that ''the bonds in controversy are funding bonds and the village had a right .... to issue funding bonds without a vote of the people; .... *unless you also find that said funding bonds created an additional debt to the village.*'' It must be conceded that under this instruction it was necessary for the jury to, and we must assume that they did, find that the *bond issue* did create ''an additional debt to the village.'' So for the purposes of this case that issue is *res judicata.* It is conceded that the issuance of these bonds was not submitted to a vote of the people of the municipality. If the judgment entered upon the verdict of the jury in the former case became *the law of the case* in all subsequent litigation between the same parties over the same issues then, under the pleadings and instructions, we have no authority or power here to further inquire into or investigate the amount, character, nature or purpose of issuance of the warrants that were outstanding at the time of this bond issue.

The allegation of appellant's affirmative defense herein seeking equitable relief for the amount paid for these bonds is as follows:

"That if it should be held and determined that the said bonds were irregularly issued and do not constitute valid or subsisting or enforceable obligations against the Village of Heyburn either in the hands of said Charles Cleveland, Joseph T. Peters, G. C. McCulloch, R. H. Avann and A. M. Graef or this defendant (assignee) and for that, or any other reason, said bonds should be canceled, the said Village of Heyburn should, in equity and good conscience, be required to pay, as a condition precedent to the cancelation of said bonds the amount by which the valid and outstanding warrants of said village were reduced and paid through the proceeds realized from the sale of said bonds, to-wit, the sum of $4,500 together with interest thereon at the rate of seven per cent per annum from the first day of June, 1922."

It is therefore clear that appellant is not seeking to pursue specific property (either cash or chattel) and have the same restored to it, but rather seeks to have equity direct an accounting and fix a *general debt liability* against the village in a case where the *law* has already refused to do so; where in truth and fact the court of law has already adjudged that the alleged indebtedness was created in violation of the prohibition of both the constitution and statute.

The bonds having been issued in violation of constitutional prohibitions are *void* and never created any municipal indebtedness. Being void they could never become valid or collectible in the hands of a purchaser. Negotiation could give them no validity or legal status as evidence of indebtedness. Nor could a purchaser be an innocent purchaser for the reason that he would be chargeable with knowledge of the constitutional and statutory restrictions and limitations under which the municipality was acting.

In *Page v. Oneida Irr. Dist.*, 26 Ida. 108, 141 Pac. 238, this court said:

"The authorities are unanimous in holding that negotiable bonds issued by a public or municipal corporation without

legislative or constitutional authority are void, even in the hands of *bona fide* purchasers, as is evidenced by the following cases'': (citing cases and quoting with approval from *Township of East Oakland v. Skinner,* 94 U. S. 255, 24 L. ed. 125).

It is therefore wholly immaterial whether or not the court enters an order canceling the bonds. Under the previous judgment and in the present state of the case it would be a mere idle gesture for the court to hold that the bonds are illegal and void and have been so adjudged by a previous judgment and still to say, notwithstanding they are illegal and void, we will not decree their cancelation. They would still remain uncollectible.

Furthermore, this is not the kind of case where the question of doing equity as a condition precedent to obtaining equitable relief can arise. Equity cannot and will not afford relief against violations of constitutional prohibitions.

When properly analyzed and the facts are understood, it will be found that the cases relied upon by appellant either expressly or impliedly recognize the distinction between *void* and *voidable* contracts. For illustration: *Tarr v. Western Loan & Sav. Co.,* 15 Ida. 741, 99 Pac. 1049, 21 L. R. A., N. S., 707, cited by appellant, was an action for the cancelation of a mortgage on the grounds of noncompliance of a foreign corporation with the corporation laws of this state. The court called attention to the fact ''that such contracts are not absolutely *void,* but that the corporation making such contracts is left without a remedy.'' The same principle was recognized in *Weber v. Pend d'Oreille Min. etc. Co.,* 35 Ida. 1, 203 Pac. 891, a kind of case in which the statute had withheld a legal remedy and the court said: ''The plaintiff may not avoid doing equity because the defendant may be without right to actively pursue his remedy.''

The case of *Williams v. City of Emmett,* 51 Ida. 500, 6. Pac. (2d) 475, relied upon by appellant does not support the contention made here. This court affirmed the judgment *enjoining carrying out the provisions of the contract*

but reversed that part of the *judgment authorizing the city to recover the money it had paid as rental on a street sprinkler which it had used,* where no contention was made that the amount paid for the use of the sprinkler was unreasonable or excessive; the court saying:

"The city, however, did use the street sprinkler and there was nothing unlawful in that use."

The same principle has been recognized by courts of equity in cases where it was sought to have mortgages and other liens canceled of record on the ground that they were usurious or barred by the statute of limitations. Courts refuse to do so on the ground that the statute *does not pay the debt* but merely *withholds any remedy* in case the statute is pleaded as a defense. The same principle controlled the decision in *Kelley v. Clark,* 23 Ida. 1, 129 Pac. 921, Ann. Cas. 1914C, 665.

It seems to us that the reasoning indulged, in reaching the conclusion that the municipality is liable to the extent of the money received from the sale of these void bonds and applied by the municipality to lawful purposes, fails to take note of this distinction between *void* and *voidable* contracts which runs through all the cases. The one class of cases holds that municipalities are bound by moral obligations as well as individuals to pay an obligation or return property where the transaction was *irregular* or *voidable* because of failure to observe some statutory or constitutional requirement; while the other class of cases holds that where the contract was absolutely *void* by reason of express constitutional or statutory provisions no liability arises and no relief can be granted. In the former cases courts of equity have in many cases required the money or property to be restored. In the latter cases the courts have almost uniformly denied relief of any kind. Denial of relief in such cases by courts of equity has been predicated either upon the express or implied grounds that *equity cannot and will not interpose its power to relieve anyone against the violation of express constitutional prohibitions.*

A careful reading of the authorities will reveal the distinction to which we refer, running through all the cases, marked of course with a greater degree of clarity in some than in others, but present in all.

These principles have been quite uniformly adhered to and followed by this court. In *Independent School Dist. v. Collins*, 15 Ida. 535, 98 Pac. 857, 128 Am. St. 76, action was prosecuted on behalf of an independent school district to recover for the district certain moneys paid upon a void contract made in violation of an express statute, and this court said:

"The rule contended for by appellant to the effect that neither party to a transaction will be permitted to take advantage of its invalidity while retaining the benefits, applies only to *voidable* contracts and not to a transaction that is absolutely *void.*"

In *Deer Creek H. Dist. v. Doumecq H. Dist.*, 37 Ida. 601, 218 Pac. 371, followed in *Mittry v. Bonneville County*, 38 Ida. 306, 222 Pac. 292, this court considered the right of one highway district to collect from another highway district money paid out by it at its instance and request for the construction of a bridge under contract made in violation of art. 8, sec. 3, of the Constitution. This court said:

"It is elementary that there can be no recovery on a void contract. . . . . Article 8, Sec. 3, of the constitution, referred to in *Allen v. Doumecq Highway District, supra,* declares 'any indebtedness incurred contrary to this provision shall be void.' It does not merely say that a contract entered into in violation of its provisions shall be void, but extends such invalidity to any indebtedness or liability incurred contrary to its provisions. The contract has been declared void for that reason. Indebtedness or liability may be incurred expressly or impliedly. The making of the contract was an attempt to incur indebtedness expressly and this the court held void. If the debt could not be incurred expressly it certainly could not be incurred impliedly, and if appellant was not entitled to recover upon the contract he could not recover upon *quantum meruit*. It would simply

be an attempt to do indirectly what could not be done directly.''

There the bridge had already been constructed. In that case the court cited *Gillette-Herzog Mfg. Co. v. Canyon County*, 85 Fed. 396, with approval and quoted from the opinion at length. In the latter case the late Judge Beatty of the federal court, in discussing the question now under consideration and the distinction between void and voidable contracts, said:

''Plaintiff's counsel further say that, if the contract was not authorized, yet, as the defendant made it, as the bridges were constructed in pursuance of it, as there was no fraud in the transaction, and as defendant accepted the bridges, and has since had the benefit thereof, it must pay for them their fair value as upon an implied contract, . . . . If such is the law, it follows that this constitutional provision is utterly useless. In open defiance of it, reckless officials could burden the people with bankruptcy. Surely, the fundamental law of the state cannot be so easily overthrown. Will the authorities cited be found, upon careful examination, to sustain counsel's views? By such examination it will be found that there was reason in each case why the contract was not absolutely *ultra vires;* that, while there was authority for making, only some irregularity occurred in the mode of compliance or payment. . . . . The distinction between the two classes of cases is that when there is authority to make the contract, but some irregularity has occurred in its provision for payment or any other irregularity, which does not turn upon the power to make it, and a corporation has received the benefit of the work done, it may be compelled to pay for it; *but, when the contract is absolutely and directly prohibited by some statutory or constitutional enactment, the contract is void,* and it cannot be enforced either as an express or implied contract; and so it must now be held of the one in question.''

In the Deer Creek case this court also quoted with approval from Judge Field's opinion in *Zottman v. San Francisco*, 20 Cal. 96, 81 Am. Dec. 96, the following:

"The law never implies an agreement against its own restrictions and prohibitions; it never implies an obligation to do that which it forbids the party to agree to do."

In *City of Litchfield v. Ballou,* 114 U. S. 190, 5 Sup. Ct. 820, 29 L. ed. 132, the Supreme Court of the United States had under consideration a provision of the Constitution of Illinois very similar to sec. 3, art. 8, of our Constitution, and held that the constitutional provision was as binding in equity as at law and that the court of chancery had no jurisdiction to grant relief. Justice Miller, speaking for the court, said:

"The language of the Constitution is that no city, etc., 'shall be allowed to become *indebted in any manner or for any purpose* to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of its taxable property.' It shall not *become indebted,* shall not incur any pecuniary liability; it shall not do this in *any manner,* neither by bonds, nor notes, nor by express or implied promises. Nor shall it be done for any *purpose,* no matter how urgent, how useful, how unanimous the wish. There stands the existing indebtedness to a given amount in relation to the sources of payment as an impassable obstacle to the creation of any further debt in any manner or for any purpose whatever.

"If this prohibition is worth anything it is as effectual against the implied as the express promise, *and is as binding in a court of chancery as a court of law."*

The foregoing was quoted with approval and followed in an opinion by Mr. Justice Gray in *Doon Township v. Cummins,* 142 U. S. 366, 12 Sup. Ct. 220, 35 L. ed. 1044. It was approved by the same court in *Hedges v. Dixon County,* 150 U. S. 182, 14 Sup. Ct. 71, 37 L. ed. 1044, the court again saying:

"Courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law. They are bound by positive provisions of a statute equally with courts of law, and where the transaction, or the contract, is declared void because not in compliance with

express statutory or constitutional provision, *a court of equity cannot interpose* to give validity to such transaction or contract, or any part thereof.''

In *Balch v. Beach,* 119 Wis. 77, 95 N. W. 132, 135, the supreme court of Wisconsin said:

''The bar of the constitution against excessive municipal indebtedness would be very weak indeed to protect the tax-paying public if, when plainly overstepped, the resulting obligation could be enforced upon equitable grounds; or if a taxpayer, upon invoking the jurisdiction of equity to prevent its enforcement, were to himself meet the arm of equity raised in defense of an invasion of constitutional rights. No one can occupy a position of defiance to the fundamental law and defend himself successfully thereunder by invoking the jurisdiction of equity. That principle was clearly declared in *Thomson v. Town of Elton,* 109 Wis. 589, 85 N. W. 425, and *McGillivray v. School Dist.,* [112 Wis. 354, 88 N. W. 310, 88 Am. St. 969, 58 L. R. A. 100] *supra,* in the holding that if a municipality obtains money of a person upon a contract which it not only has no power to make but is prohibited from making, such person has no equitable right to recover the same even though he may be able to show that it was in fact used for legitimate municipal purposes. Courts, in such a situation, *both of law and equity,* upon grounds of public policy, leave both parties where they have placed themselves.''

It should be borne in mind that this case does not raise or involve the question as to whether or not the purchaser of *void* bonds may follow and claim return of *specific, identified* property delivered to a municipality on a void contract. We are expressing no opinion on any such an issue.

This case is decided upon the rule of estoppel by judgment. The discussion herein indulged by the writer on equity issues is only considered of importance by reason of the contention advanced and so ably urged by appellant's counsel that appellant is entitled to equitable relief. We deem it proper to state here that counsel who represent appellant in this case did not appear in the original case,

the judgment in which is held to be *res judicata* in the present case.

Judgment affirmed with costs to respondent.

Morgan and Holden, JJ., concur.

Petition for rehearing denied.

BUDGE, J., Dissenting.—Respondent, Village of Heyburn, commenced this action against appellant, Security Savings and Trust Company, the owner and holder for collection, of nine funding bonds of $500 each, aggregating $4,500, appearing upon their faces to have been issued by respondent June 1, 1922, seeking to have said bonds canceled and adjudged and decreed to be void.

About June 1, 1922, respondent's officers concluded respondent was indebted on outstanding warrants in the sum of $4,813.34, exclusive of accrued interest, and for the purpose of obtaining funds with which to partially pay this warrant indebtedness issued the funding bonds in question. Ultimately the bonds were sold to five individual purchasers by Morris Brothers Corporation of Portland. Respondent paid some interest coupons on the bonds and then defaulted. The purchasers assigned the bonds, together with the unpaid coupons, to appellant and it instituted an action on June 26, 1928, against respondent village to recover the amounts due on the unpaid coupons. In that action the jury returned a general verdict for defendant, respondent herein. Thereafter, prior to the entry of judgment but after the entry of the verdict, respondent instituted the present action seeking cancelation of the bonds, pleading the substance and attaching copies of the various pleadings and the judgment in the former action instituted to recover on the unpaid coupons. Respondent further pleaded that the bonds incurred an indebtedness exceeding the income and revenue of the village for the year in which they were issued; that they were issued without the assent of two-thirds of the qualified electors voting at an election held for that purpose;

that the indebtedness represented by the bonds, with the other outstanding bonds of the village, exceeded in the aggregate ten per cent of the assessed full cash valuation of the property of respondent; that the bonds were issued for the payment of illegal warrants and not for the purpose of paying any valid outstanding indebtedness of the village; that the bonds were not in the hands of or owned by an innocent purchaser, and that appellant was not a holder in due course. This cause was tried to the court, and findings of fact, conclusions of law and judgment entered in favor of respondent, from which judgment this appeal is prosecuted.

Appellant designates some 21 assignments of error, which in the interest of brevity need not be fully set forth inasmuch as appellant has pointed out that the assignments raise three general questions, an answer to which is determinative of the questions involved. These questions as stated by appellant are as follows:

1. "Does the judgment in the former action constitute an adjudication of all questions involved in this action and a determination that the bonds are invalid and that the purchasers are not holders in due course?"

2. "If the above questions are open, were the purchasers under the facts found and disclosed, holders in due course?"

3. "If invalidity of bonds and that purchasers are not holders in due course be determined, either by the judgment in the former suit or by independent proof offered in this, is not the plaintiff required to 'do equity' by returning the money received for the bonds?"

In the instant action the trial court, among other things, found and concluded that all the issues involved in this action were involved in the former action and were judicially determined in said former action in favor of respondent and against appellant; that the judgment made and entered in the former action constitutes *res judicata* of all the issues involved in this action and is and constitutes an estoppel by judgment against the appellant to deny or refute any and all of the issues that were involved in said action.

Likewise the court found and concluded upon each of the issues involved in this action in favor of respondent and against appellant, among these the court concluding that judgment in the former action constituted an adjudication that the bonds of respondent were not legal, valid or enforceable obligations against respondent, and that the individual purchasers and appellant were not holders in due course.

The scope of the estoppel of a former judgment, when the parties are the same, depends upon whether the question arises upon the same claim or demand or upon a different claim or demand. (*Tait v. Western Maryland R. Co.,* 289 U. S. 620, 53 Sup. Ct. 706, 77 L. ed. 1405; *United States v. Moser,* 256 U. S. 236, 241, 45 Sup. Ct. 66, 69 L. ed. 262.) While in an action between the same parties upon the same claim or demand the former adjudication concludes parties and privies as to every matter offered and received to sustain or defeat the claim and also as to every matter which might and should have been litigated in the first suit (*Joyce v. Murphey Land etc. Co.,* 35 Ida. 549, 208 Pac. 241; *South Boise Water Co. v. McDonald,* 50 Ida. 409, 296 Pac. 591), the rule applies only where the same cause of action is sued on. (*Lynn v. McCue,* 94 Kan. 761, 147 Pac. 808.) Where the second action, between the same parties, is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters which were in fact decided, and the judgment in the former action is not conclusive in the later action as to those matters which might have been decided. (*Last Chance Min. Co. v. Tyler Min. Co.,* 157 U. S. 687, 15 Sup. Ct. 733, 39 L. ed. 859, 862; *New Orleans v. Citizens' Bank,* 167 U. S. 371, 17 Sup. Ct. 905, 42 L. ed. 202; *Southern Pac. R. Co. v. United States,* 168 U. S. 1, 18 Sup. Ct. 18, 42 L. ed. 335; *Russell v. Place,* 94 U. S. 606, 24 L. ed. 214; *Forsyth v. Hammond,* 166 U. S. 506, 17 Sup. Ct. 665, 41 L. ed. 1095; *Elgin v. Marshall,* 106 U. S. 578, 1 Sup. Ct. 484; 27 L. ed. 249; *United States v. Moser, supra; Troxell v. Delaware L. & W. R. Co.,* 227 U. S. 434, 33 Sup. Ct. 274, 57 L. ed. 586;

*Mason Lumber Co. v. Buchtel,* 101 U. S. 638, 25 L. ed. 1073; *Virginia-Carolina Chemical Co. v. Kirvin,* 215 U. S. 252, 257, 30 Sup. Ct. 78, 54 L. ed. 179, 184; *Fehringer v. F. H. Martin Drug Co.,* 56 Colo. 445, 138 Pac. 1007; *Voyles v. Straka,* 77 Utah, 171, 292 Pac. 913; *Horton v. Goodenough,* 184 Cal. 451, 194 Pac. 34; *Estate of Clark,* 190 Cal. 354, 212 Pac. 622; *Cressler v. Brown,* 79 Okl. 170, 192 Pac. 417; *Scott v. Wagner,* 2 Kan. App. 386, 42 Pac. 741; 34 C. J. 874; 15 Cal. Jur., secs. 189, 193, pp. 136, 142.) The pronouncement of the rule which is probably most frequently cited and quoted is to be found in *Cromwell v. Sac County,* 94 U. S. 351, 24 L. ed. 195, and is as follows:

''In considering the operation of this judgment, it should be borne in mind, as stated by counsel, that there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose . . . .

''But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action; not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action.''

A' more recent pronouncement of the rule is to be found in *Tait v. Western Maryland R. Co., supra,* in the following language:

"The scope of the estoppel of a judgment depends upon whether the question arises in a' subsequent action between the same parties upon the same claim or demand or upon a different claim or demand.

"In the former case a judgment upon the merits is an absolute bar to the subsequent action.

"In the latter the inquiry is whether the point or question to be determined in the later action is the same as that litigated and determined in the original action."

It is likewise settled law that to this operation of the judgment it must appear, either upon the face of the record or from extrinsic evidence, that the precise question was raised and determined in the former suit. (*Mason v. Ruby,* 35 Ida. 157, 204 Pac. 1071; *Marshall v. Underwood,* 38 Ida. 464, 221 Pac. 1105; *Fehringer v. F. H. Martin Drug Co., supra; Russell v. Place, supra.*)

Applying the foregoing rules to the action at bar, it appears at once that the parties in the former and present suits are identical; however, it appears that the cause and form of action in the former suit is different from the form and cause of action in the instant suit. The former was an action at law brought to recover the amount of due and unpaid coupons,—the instant action seeks to obtain a decree of a court of equity canceling bonds both due and not due, the situation being that although the parties are the same the two actions were not upon the same claim or demand and the question being: What matters were raised and determined in the former suit?

Any and all references in the pleadings in the former suit to those matters held by the trial court, and now urged, to be *res judicata* are to be found in the answer filed by respondent. It is there affirmatively alleged as matter of defense to the suit upon the coupons that respondent:

"Had no record of the issuance of any funding bonds . . . . or the registration thereof or of any proceeding

authorizing or attempting to authorize or empower the issuance of such bonds; . . . . that if any funding bonds were issued or attempted to be issued . . . . the said bonds were not issued in accordance with law . . . . ; that if any funding bonds were issued, the same were issued for the purpose of funding, refunding, purchase or redemption of warrants that were illegally and unlawfully issued by the said Village . . . . and that the said warrants so purported to be funded were not legal or valid obligations . . . . the same constituted incurring additional liability . . . . and increased the indebtedness . . . . , and the same were issued without submitting the question to the qualified electors of the said Village. . . . . That if the said bonds were issued, . . . . the same were not sold by the said Village in accordance with the provisions of the Statutes of the State of Idaho. . . . . That by reason thereof, the board of trustees . . . . were not authorized and could not legally make any valid or binding delivery of the said bonds or any part thereof.''

It thus appears that in the former action at law respondent as defensive matter alleged *several* matters of mere defect, irregularity or infirmity in the issuance of the bonds, and some matters of illegality. In view of the fact that judgment in the former action was entered upon the verdict of a jury it would appear to be entirely logical and proper to examine the instructions upon and under which the verdict was rendered to determine what matters were presented to the jury and upon what matter the jury was required to pass in order to reach a verdict for respondent. (*De Sollar v. Hanscome*, 158 U. S. 216, 15 Sup. Ct. 816, 34 L. ed. 956.) Instruction number 8 is the chief and controlling instruction of the court's charge to the jury with relation to the rendition of a verdict in respondent's favor, it being the only one which specifically advises the jury the essential issues it must determine in order to render a verdict for respondent. This instruction advised the jury the paramount issues it must determine, and the manner in which such issues must be determined, in order that it might

render a verdict for respondent, being, in its material part, as follows:

"*There are two questions for you to determine in this case:* (1) Whether or not there were defects in the proceedings had in the issuance of the bonds which would render them invalid or create a defect in the title thereto. (2) Whether or not the plaintiff when it purchased said bonds had actual knowledge of such defects, if any, or knowledge of such facts that its acts in taking the bonds amounted to bad faith.

"*If you find that defects in the proceedings render the bonds invalid, or any defects of the title thereto, your verdict will be nevertheless for the plaintiff unless you further find that plaintiff had actual knowledge of such defects or knowledge of such facts that its acts in taking the bonds amounted to bad faith.* In other words, *you must be satisfied by the evidence as herein elsewhere defined that both of the above questions are answered in the affirmative before you can find for the defendant.*"

There would seem to be no room for argument that in the face of the above instruction, whether it be a correct or incorrect statement of the applicable law, the jury could not reach a verdict for respondent unless it determined *both* that "there were defects in the proceedings had in the issuance of the bonds which would render them invalid or create a defect in the title thereto" and that when appellant's assignors "purchased said bonds (they) had actual knowledge of such defects, . . . . or knowledge of such facts that (their) acts in taking the bonds amounted to bad faith." The jury was required to answer these two issues in the affirmative before it could render a verdict in favor of respondent. Having rendered a verdict in favor of respondent it must follow that the jury determined that there were defects in the proceedings had in the issuance of the bonds which would render them invalid or create a defect in the title thereto and that the purchasers had either actual knowledge of such defects or knowledge of such facts that their acts in taking the bonds amounted to bad faith.

Appellant herein, plaintiff in the former case, did not choose to appeal from the judgment or the order overruling its motion for new trial in the first action and have the questions determined in the former suit reviewed.

It has been urged that a special interrogatory submitted to and answered by the jury in the first action is out of harmony with the foregoing conclusion and the general verdict. This special interrogatory is as follows:

"Did the plaintiff or the plaintiff's Assignors, at the time of the purchase of the coupon bonds in controversy in this action, have any actual notice or knowledge that the Village of Heyburn, Idaho, claimed there were any irregularities in the issuance of the said bonds?

"ANSWER TO SPECIAL INTERROGATORY (Answer YES or NO). *NO.*"

It is quite apparent from the record that *at the time of the purchase* of the coupon bonds in controversy respondent made no claim that there were any irregularities in their issuance. No *claim* to such effect was made until some time after purchase. It also appears that the interrogatory asks only whether the purchasers had *actual* notice or knowledge. Appellant may or may not have had actual knowledge or notice, and yet may have had knowledge of such facts that the acts in purchasing amounted to bad faith. I. C. A., sec. 26–402, provides:

"A holder in due course is a holder who has taken the instrument under the following conditions: . . . .

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

I. C. A., sec. 26–406 provides:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith."

It appears that the general verdict is not inconsistent with, antagonistic to, or in irreconcilable conflict with the special interrogatory. While it is provided by statute, I. C. A., sec. 7–220, that "Where a special finding of fact is inconsistent with the general verdict, the former controls the latter, and the court must give judgment accordingly.", yet the general verdict is controlling when the special finding is not inconsistent or in irreconcilable conflict therewith. The rule stated in 64 C. J., sec. 965, p. 1179, supported by numerous cases, is as follows:

"The general verdict will stand unless it and the special findings or answers to interrogatories are clearly and absolutely irreconcilable so that both cannot stand. To be in irreconcilable conflict with the general verdict, the special answers or findings must exclude every reasonable theory, hypothesis, or conclusion which would authorize the verdict, and the conflict must be incapable, or beyond the possibility, of removal by any supposable or conceivable evidence legitimately admissible under the issues."

While the conclusion heretofore reached is that the judgment in the former case constitutes *res judicata* of those matters actually determined, it does not follow therefrom that the former judgment is *res judicata* as to every question at issue in the present case, nor does it follow therefrom that the former action constitutes *res judicata* upon questions which are determinative of respondent's obligation to do equity in this suit. It must be borne in mind that respondent is not defending an action to recover a judgment upon the bonds or coupons. Respondent has taken the initiative and has instituted this action to obtain a decree of a court of equity declaring the bonds to be void and canceling them. The question is: Even though the former suit determined "there were defects in the proceedings had in the issuance of the bonds which would render them invalid or create a defect in the title thereto," and that neither appellant nor the purchasers are holders in due course, can respondent, after having received the money paid for the bonds, defective in their issuance, have a cancelation of such

bonds without doing equity? In other words, did the former suit determine that such a defect or invalidity existed in the issuance of the bonds which would release respondent from doing equity? In this respect it is urged by respondent that the principle that the court in a suit in equity should require the plaintiff to do equity does not apply in this action as plaintiff is a public corporation and the bonds were issued in violation of constitutional and statutory restrictions enacted for the protection of the taxpayers of the village, and that where the invalidity is due to essential lack of power no liability is raised against the corporation. In the instant case those matters of illegality or infirmity in the issuance of the bonds, upon which respondent bases its prayer for cancelation, are to be found in paragraph 9 of its complaint, which recites as follows:

"That at the time the said bonds were issued they incurred an indebtedness exceeding the income and revenue of the plaintiff the Village of Heyburn, for the year in which they were issued; that they were issued without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose; that the said indebtedness represented by said bonds, together with the other bonds of the Village of Heyburn, that were outstanding at the time the same were issued, exceeded in the aggregate ten per cent of the assessed full cash value of the real estate and personal property of said Village of Heyburn according to the assessment roll of the preceding year; that the said bonds were issued for the payment of illegal and unlawful warrants of the said Village of Heyburn, *and not for the payment of any valid, existing outstanding indebtedness of the said Village of Heyburn.*"

In this suit respondent relies for its proof of the above matters upon *res judicata* and also independent proof in the instant action. Respondent's contention again calls into question the scope of the estoppel of the former judgment; that is, Is the judgment in the former action *res judicata* in the instant suit upon those matters alleged in paragraph 9 above quoted? Applying the applicable rules, it does not

appear that the former judgment is *res judicata* of any of the questions formed by the allegations of paragraph 9 of the complaint in the instant suit; it does not appear, either upon the face of the record, nor is it shown by extrinsic evidence, that any of the precise questions were actually determined in the former suit. As has been heretofore mentioned, respondent in the former action by answer alleged several matters with relation to irregularity, illegality, infirmity and defect in the issuance of the bonds, some of which went to the question of whether the bonds were wholly void and others of which went merely to questions of defect. Instruction number 8 advised the jury if it found *any* of these various defects to exist, and that the purchasers were not holders in due course, its verdict should be for respondent. The question then arises: What illegality, defect, infirmity or irregularity, in the issuance of the bonds did the jury find existed by their general verdict in favor of respondent? Instruction number 8 discloses that the trial court believed that sundry matters of illegality, irregularity or defect in the issuance of the bonds were in issue. Looking to the remaining instructions it appears that the court instructed the jury upon these issues. Without considering the correctness of these instructions, nevertheless it appears that many subordinate questions were submitted to the jury. Under these instructions the jury was at liberty to find for respondent if it found that any one of the subordinate issues with relation to irregularity, illegality or defect existed in the issuance of the bonds, and likewise found that the purchasers were not holders in due course. It cannot be ascertained from the record, the pleadings, the instructions nor from the general verdict which or what subordinate issue of illegality, irregularity or defect was found to exist by the jury. The instructions left it open to the jury to find for respondent upon either or any of several propositions, and the general verdict not specifying upon which the jury found, there can be no certainty that they found upon one rather than another. (*De Sollar v. Hanscome, supra.*) It cannot be said that the jury found

such a defect existed in the issuance of the bonds as would exempt respondent from the obligation of doing equity. The judgment in the former suit,—the present suit not being upon the same claim or demand,—cannot be said to be *res judicata* herein to any further extent than having determined that there was some defect or irregularity in the issuance of the bonds and that appellants were not holders in due course, which does not constitute a determination that such an invalidity existed as would exempt respondent from doing equity.

While respondent urges that because it is a public corporation it is exempt from doing equity, it appears to be well established that a municipality or public corporation is not wholly immune, but, like all others, is subject to the doctrine, numerous cases having so determined. (*Parkersburg v. Brown*, 106 U. S. 487, 1 Sup. Ct. 442, 27 L. ed. 238; *Louisiana v. Wood*, 102 U. S. 294, 26 L. ed. 153; *Marsh v. Board of Supervisors*, 77 U. S. (10 Wall.) 676, 19 L. ed. 1040; *Pimental v. City of San Francisco*, 21 Cal. 352; vol. 3, McQuillin's Municipal Corporations, 2d ed., 1002; *First Nat. Bank v. Goodhue*, 120 Minn. 362, 139 N. W. 599, 43 L. R. A., N. S., 84.) In *County of Ada v. Bullen Bridge Co.*, 5 Ida. 188, 47 Pac. 818, 824, 95 Am. St. 180, 36 L. R. A. 367 (on rehearing), in an action for equitable relief by cancelation of county warrants, while the court held that plaintiff had an adequate remedy at law, the following appears in the opinion:

"And further no offer is made by the county to place defendants *in statu quo*. This was not considered on the former hearing of this case. Equity would not permit the county to retain the bridge and other improvements and have said warrants cancelled. One of the fundamental principles of equity is, 'He who asks equity must do equity,' even in favor of one who has entered into and executed a voidable contract."

In *Fales v. Weeter Lumber Co., Ltd.*, 26 Ida. 367, 143 Pac. 526, the Weeter Lumber Company had foreclosed a materialman's lien on community property belonging to

Fales and his wife, but had neglected to make the wife a party to the proceedings. Both Fales and his wife, and particularly the latter, contended that the judgment was void as to her and asked to have the same set aside. The court said:

"It is a familiar maxim of equity that a party asking equity must first do equity, and a court of conscience would not permit her to appropriate said material without paying for it, which the record shows she has not done. The record also shows that said lien attached before she began to reside upon said premises and that she had full knowledge that the Weeter Lumber Company had furnished said material and that it had not been paid for. As a matter of equity and good conscience, neither of the respondents would be permitted to maintain this action without first paying to the appellant the balance due for said building materials."

The court reaffirmed the above rule in *Gerken v. Davidson Grocery Co.*, 50 Ida. 315, 296 Pac. 192, in a case where a mortgage on community property was foreclosed without the wife being made a party. The wife thereafter instituted a suit in her name to vacate the judgment of foreclosure and to quiet title to the property, on the ground that the former decree was void as to her. Relief was denied upon the ground that the mortgage had not been paid.

The most recent case in this court dealing with such a question is *Williams v. City of Emmett*, 51 Ida. 500, 6 Pac. (2d) 475, 478, in which this court recognized the principle, saying in the opinion as follows:

"Clearly the court could not enter an equitable decree without taking account of the benefits to the city resulting from the execution of the contract. The city could not have these benefits and a return of the money paid out on account of them too, even though the agreement under which the benefits were had was illegal. . . . . No fraud is alleged or shown in this case. The contract is not *malum in se* nor is it prohibited in law under a penalty which renders its making a penal offense. It is simply a contract illegal and void and therefore unenforceable because the city officials

did not pursue the methods provided by law to accomplish the objects of the agreement. The city, however, did use the street sprinkler and there was nothing unlawful in that use."

In the note to *City of Henderson v. Redman,* 185 Ky. 146, 214 S. W. 809, 7 A. L. R. 346, note beginning on page 353, A. L. R., is to be found a collection of most of the cases dealing with the question of the obligation of a municipality or public corporation to do equity or to return money received by it. Therein it is pointed out that the fundamental question to be determined with relation to the obligation of a public corporation to do equity is whether or not the doing of equity by the municipality would operate to invade the rights of taxpayers, in that the municipality would be doing that which it could not legally do otherwise. The rule, supported by the great weight of authority, is, that when the municipality has received the benefit of the proceeds of invalid instruments of indebtedness, and where the public corporation has the general power to contract indebtedness for the purpose of which it used the proceeds of invalid bonds or instruments of indebtedness, it may be held liable on implied contract for the money thus received and appropriated, without reference to the ground of the invalidity; providing, of course, that such invalidity is not due to a violation of public policy or express constitutional or statutory inhibition. That is, in order that an implied liability may be raised against a public corporation by reason of money it has received for invalid securities, it should appear that the enforcement of the implied liability will not evade the safeguards imposed by law as a protection for the taxpayers. When the municipality has received money, and has used such money for the benefit of the municipality, and such use does not operate to nullify those safeguards imposed by law for the protection of the taxpayers, then the municipality is liable upon implied contract for money received and so used. The annotation to *City of Henderson v. Redman, supra,* contains a thorough discussion of the question, and many authorities are there cited and quoted, and it would appear that no

good purpose would be served therefore by a citation of such cases. The opinions of this court in *Mittry Bros. v. Bonneville County*, 38 Ida. 306, 222 Pac. 292, and *Deer Creek H. Dist. v. Doumecq H. Dist.*, 37 Ida. 601, 218 Pac. 371, in which recovery for material furnished and services rendered, which were not legitimately contracted for, was denied, are readily distinguishable and are not out of harmony with the conclusion reached herein. Those cases dealt with actions at law and the question of the obligation to do equity was not present and not decided. In those cases the public corporations involved did not receive cash, but goods and services, and the cases do not consider nor decide the question of whether in an equitable suit for cancelation of instruments of indebtedness the public corporation was obligated to do equity or place the adverse parties *in statu quo* by a return of the materials furnished. Furthermore, it does not appear that the cases are harmonious in point of fact with relation to the effect upon taxpayers for whom such rights exist. In the instant case, as appears hereinafter, there is no evasion of any prohibition. Recovery is permitted of that amount of money paid to, received by and spent by the municipality for legitimate purposes, not prohibited and which in no way affects the rights of taxpayers, and which is not in contravention of public policy or any right enacted for the benefit of taxpayers.

In the application of the foregoing rule to the instant case it is necessary to consider those matters alleged to make the bond issue illegal and invalid, in connection with the independent proof submitted. The first matter of illegality alleged in the instant case, upon which respondent bases its right to cancelation, is:

"That at the time the said bonds were issued they incurred an indebtedness exceeding the income and revenue of the plaintiff the Village of Heyburn, for the year in which they were issued; that they were issued without the assent of two thirds of the qualified electors thereof, voting at an election to be held for that purpose."

It is unnecessary to determine whether or not there was an election held or whether the amount of the bonds exceeded the income and revenue of respondent, as these matters appear to have no effect upon the ultimate conclusion. The foregoing allegation is undoubtedly based upon the provisions of art. 8, sec. 3, of the Constitution, which provides in its material part as follows:

"No county, city, town, township, board of education, or school district, or other subdivision of the state, shall incur any indebtedness, or liability, in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two thirds of the qualified electors thereof voting at an election to be held for that purpose. . . . . Any indebtedness or liability incurred contrary to this provision shall be void; provided, that this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state."

The record discloses that the bonds herein purported to have been issued were issued for the purpose of funding the outstanding warrant indebtedness of the village. The record also discloses that at least some portion of the fund received was used for such purpose. It has been held by this court that such bonds when legally issued do not increase the legal indebtedness within the meaning of the foregoing constitutional provision, but simply change the form of existing indebtedness from warrant to bond. (*Butler v. Lewiston,* 11 Ida. 393, 83 Pac. 234; *Veatch v. Moscow,* 18 Ida. 313, 109 Pac. 722, 21 Ann. Cas. 1332; *Sebern v. Cobb,* 41 Ida. 386, 238 Pac. 1023.)

The second allegation is that:

"The said indebtedness represented by said bonds, together with the other bonds of the Village of Heyburn, that were outstanding at the time the same were issued, exceeded in the aggregate ten per cent of the assessed full cash value of the real estate and personal property of said Village of Heyburn according to the assessment roll of the preceding year."

Even though it be said that it appears from the independent proof submitted in this suit that this allegation has been established, it does not follow that such fact would have any effect upon respondent's obligation to do equity. Such conclusion, under the facts of this case, would amount to nothing more than a determination that respondent could not obligate itself by way of a bond issue to raise funds for the purpose of paying its outstanding warrant indebtedness. Although respondent may have been prohibited from changing its obligation from a warrant indebtedness to a bonded indebtedness, the conclusion in no way affects the liability of respondent upon its warrant indebtedness, nor from paying such warrant indebtedness with funds derived from other sources than a bond issue.

The third matter of illegality alleged appears to be the controlling issue as to respondent's obligation to do equity. The allegation recites:

"That the said bonds were issued for the payment of illegal and unlawful warrants of the said Village of Heyburn, and not for the payment of any valid, existing outstanding indebtedness of the said Village of Heyburn."

In this behalf it is urged that certain of the outstanding warrants paid with the money received were issued to village officers and that there were certain double payments of outstanding warrants. No findings were made by the court as to the amounts paid for the various purposes, and from the record it cannot be clearly ascertained what amounts, if any, were used to pay illegal warrants, what amounts, if any, were used to make double payments, what amounts, if any, were used to pay ordinary and necessary expenses authorized by the general laws of the state, nor can it be ascertained whether warrants paid to public officials were illegal. The record discloses that the city actually received $4,050, in cash, and that it expended this fund for various purposes. The situation is, in effect, that the village has received this amount of money from appellant; that, the receipt of the cash by respondent and its use for the benefit of the municipality created a liability in equity on the part

of respondent to return that portion of the amount received which was used by respondent for the payment of the then outstanding legal warrants of the village, the ordinary expenses of the village, and any other legal indebtedness of the village not prohibited by the provisions of the Constitution or statutes. Fundamentally, the receipt of the fund is ostensibly not an increase of indebtedness in so far as the fund was used in the payment of outstanding legal warrants, or the ordinary and necessary expenses authorized by general laws and not prohibited by the Constitution. By the provisions of art. 8, sec. 3, of the Constitution ordinary and necessary expenses authorized by the general laws of the state are not within the constitutional inhibition. (*Thomas v. Glindeman,* 33 Ida. 394, 195 Pac. 92; *Dexter Horton Trust etc. Bank v. Clearwater County,* 235 Fed. 743, 752.) I. C. A., secs. 49–1909 and 57–201, prohibit municipal officers from being interested in municipal contracts. (*Collman v. Wanamaker,* 27 Ida. 342, 149 Pac. 292.) To the operation of the foregoing section the capacity of the individual must be ascertained as of the time the services were performed and the contract entered into.

It is my opinion the judgment should be reversed and the cause remanded, with instructions to the trial court to ascertain what, if any, legal obligations evidenced by warrants, were paid out of the money received from the sale of the purported bonds, and what, if any, moneys from said fund were paid for the ordinary and necessary expenses of the municipality under the provisions of art. 8, sec. 3, of the Constitution. In other words, respondent should be required to do equity.

Givens, C. J., concurs in the foregoing dissenting opinion.