(December 31, 1923.)

## ALEXANDER MARSHALL, Appellant, v. WILLIAM G. UNDERWOOD, Respondent.

[221 Pac. 1105.]

RES JUDICATA — INCLUDES ALL FACTS LITIGATED OR UNDISPUTED — MATTER INCLUDED IN FORMER JUDGMENT—IDENTITY OF ISSUES— PROOF.

1. Estoppel by judgment includes all facts actually litigated, whether or not technically in issue on the face of the pleadings.

2. The matter concluded by a former judgment is the ultimate fact or facts on which such judgment was based, the true test being identity of issues.

3. It must appear from the record itself, or by resort to extrinsic evidence, that the precise issue in the second action was involved and decided in the first.

APPEAL from the District Court of the Fifth Judicial District, for Bannock County. Hon. Robt. M. Terrell, Judge.

Action by Alexander Marshall against Wm. G. Underwood. From a judgment for defendant, plaintiff appeals. *Affirmed.*

Peterson & Coffin, for Appellant, cite no authorities.

Budge & Merrill, for Respondent.

Evidence in a former suit is properly resorted to to show what was litigated in that action. (23 Cyc. 1292; *Newton Mfg. Co. v. Wilgus,* 90 Fed. 483; *Graves v. Hebbron,* 125 Cal. 400, 58 Pac. 12; *Roseberry v. Clark,* 23 Cal. App. 549, 138 Pac. 993.)

A former judgment is not only conclusive as to matters which were actually tried and determined but also as to other matters which might have been litigated and determined. (*Ivancovich v. Weilenman,* 144 Cal. 757, 78 Pac. 268; *Wheeler v. Eldred,* 137 Cal. 37, 69 Pac. 619.)

The estoppel of the judgment covers all points actually litigated whether or not they were technically in issue on the face of the pleadings. (23 Cyc. 1304; *Weidner v. Lund,* 105 Ill. App. 454; *Redden v. Metzger,* 46 Kan. 285, 26 Am. St. 97, 26 Pac. 689.)

ADAIR, District Judge.—The plaintiff instituted this action to quiet title to certain springs which he designated in his complaint as the "Lower Hot Springs," situate on lands owned by him near Downey, Idaho, in Section 12, Twp. 12 S. of Range 37 E., B. M., and claimed said waters, as against the respondent, for irrigation and commercial bathing purposes. The defendant, besides filing a cross-complaint under which he claimed a prior right to said waters, by his answer alleged that the entire matter is *res judicata,* having been completely and finally adjudicated between the same parties in a former suit involving the same water rights and property. On the issue of *res judicata* alone the defendant submitted testimony, and rested, and thereupon the trial court found in his favor.

The doctrine of *res judicata,* or estoppel by judgment, as it is sometimes termed, is a rule of law founded on the soundest consideration of public policy. If an action is brought and the merits of the question are discussed between the parties in open court and considered by the trial court, and a final judgment is obtained by either, the parties are then concluded and cannot again canvass the same question in another suit. The great preponderance of authority sustains the rule that the estoppel of a judgment covers all points which were actually litigated and which actually determined the judgment or finding, whether or not they were technically in issue on the face of the pleadings.

Another statement of the same rule found in some of the cases is that the matter in issue or point in controversy which is concluded by a former judgment is that ultimate fact or state of facts on which the judgment

was based. (*Oglesby v. Attrill*, 20 Fed. 570; *Smith v. Ontario*, 4 Fed. 386, 18 Blatchf. 454.)

The true test is identity of issues. If a particular point or question is in issue in the second action, and the judgment will depend upon its determination, a former judgment between the same parties will be final and conclusive in the second action if that same point or question was in issue and adjudicated in the first suit, otherwise not. And in order that this rule should apply, 'it must clearly and positively appear, either from the record itself or by the aid of competent extrinsic evidence, that the precise point or question in issue in the second suit was involved and decided in the first. (*Jensen v. Berry & Ball Co.*, 37 Ida. 394, 216 Pac. 1033; 23 Cyc. 1300.)

It appears from the evidence that these lands above described slope downward in a northerly direction; that there are a considerable number of springs situate thereon, and lying in close proximity; that many years ago the predecessors of Underwood cleaned out said springs, constructed a dam on the lower side and an irrigation ditch leading from the pool or reservoir thus formed, and used the waters arising there, for irrigation purposes, upon lands lying to the northwest; that later the appellant, Marshall, constructed a bathing pool below the dam and north therefrom, down the hill about ten feet, by excavating and cleaning out the marsh which had previously existed north of said dam; that said bathing pool is approximately ninety feet long and twenty-four feet wide; that said bathing pool and said original reservoir are separated by an artificial embankment or dike; that Marshall also erected some bath-houses or dressing-rooms, and a smaller pool; that the bath-houses stand between the original reservoir and the bathing pool and are built upon the dike or embankment, into which piles and lumber have been driven by the appellant. It also appears that there are several small springs, flowing approximately 17/100 of a cubic foot of water per second arising in the bed of the large bathing pool, and that the

surface of the water in said bathing pool, and also the bottom thereof, are somewhat lower than the surface of the water and the bottom, respectively, of the reservoir formed by the confluence of the upper springs, and that water from the bathing pools will not run by gravity into the Underwood irrigation ditch as it is now constructed.

It further appears that on April 10, 1915, the respondent Underwood filed suit in the district court in and for Bannock county against the appellant Marshall, alleging ownership of certain lands; that said lands were arid in character, and required irrigation for their proper cultivation; that for the irrigation thereof his predecessors had for many years "diverted the waters of a certain group of springs commonly known and called the Hot Springs, situated within the S.W. ¼ of Section 12, Township 12 S. R. 37 East, Boise Meridian"; that said diversion was by means of a ditch which had its intake in said springs, and which extended in a northwesterly direction. Said complaint then contained additional allegations usual in water suits. It is further alleged that during the spring or summer of 1912 the appellant Marshall had constructed below and on the northerly side of said springs a large bathing pool and on the edge thereof certain structures used as dressing-rooms, and that appellant diverted the waters of said group of springs into said bathing pool, and during the years of 1912, 1913 and 1914, wrongfully diverted from said group of springs large quantities of water, to the damage and injury of respondent.

To this complaint the appellant Marshall, as defendant therein, made answer and filed a cross-complaint, in which he alleged that he owned all the waters of the certain Hot Springs lying on said lands, and set forth his prior right to the use of one-fourth of the waters of said group of springs.

On the issues thus raised a decree was thereafter entered, in which it was adjudged and decreed "that

plaintiff's right and title to all of the waters of that certain group of springs commonly known and called the Hot Springs, situated within the S.W.¼ of Section 12, Township 12 South, Range 37 East, Boise Meridian, the approximate flow of which is two cubic feet per second—save and except three miner's inches hereinafter decreed to the cross-complainant—be and the same is hereby quieted and established against the defendant Alexander Marshall, and all persons claiming or to claim by, through or under him.''

It was further provided that Underwood should have the right to clean out said springs and each and all of them, and to repair the dam and ditch in order to secure the free and full flow of the waters of said springs to his lands, and Marshall was perpetually enjoined from in any manner interfering with Underwood's rights. The decree further provided that Marshall had no right, title or interest in or to the waters of said spring for commercial bathing, and he was permanently enjoined from diverting said waters for that purpose, or in any manner polluting said waters by such or any other use. No appeal from said judgment was ever taken.

It is contended by the appellant herein that the springs having their origin in the large bathing pool were not a part of the group of springs described in, and were not affected by, the former decree, while the respondent contends that the entire matter was fully and finally considered and determined in the first action.

While it is true that there was no attempt in the former action to distinguish between what the appellant now attempts to designate as the ''Upper'' and ''Lower'' Hot Springs, all apparently having then been considered and treated as one group of springs, it clearly appears from the pleadings, decree, testimony and exhibits that the entire matter was before the trial court, including the respective rights and claims of the parties to the use of the waters of all these springs for irrigation purposes, and the right of the appellant to use a portion thereof

for bathing purposes, and that the trial court did in fact have testimony before it relative to all these springs, and that their situation, condition, flow and use were the ultimate facts upon which the former judgment was based. The court intended to, and did actually, adjudicate the entire matter. All of these springs arise within the above-described lands, and lie in close proximity. Whether or not they constitute one or two groups of springs is not necessary to be determined. However, it affirmatively appears that prior to the construction of the dike hereinbefore mentioned, these springs were not separated, and were regarded as, and in reality were, one group of springs. A careful examination of the entire record, including the pleadings, judgment, exhibits and testimony adduced at both hearings, clearly shows a concurrence of the four conditions which make this matter *res judicata,* namely: identity (1) of the thing sued for; (2) of the cause of action; (3) of the parties; and (4) of the quality of the persons for or against whom the claims were made. We are convinced that this entire matter was fully considered and adjudged in the former action.

The judgment of the district court, being in accordance with our views, is affirmed. Costs are awarded to respondent.

McCarthy, Dunn, William A. Lee and Wm. E. Lee, JJ., concur.