· 425 P.2d 52

**A. J. GAIGE and Donald K. Seitz,
Plaintiffs-Respondents;**

**v.**

**CITY OF BOISE, State of Idaho and Harold
T. Jones, Vernon E. Morris, Henry F. Koch,
Edward W. Rice, Sherman A. Perry and
Warren H. Bakes, Council Members of the
City of Boise, Defendants-Appellants.**

**No. 9875.**

Supreme Court of Idaho.

March 14, 1967.

C. Stanley Skiles, Boise, for appellants.

Richards, Haga & Eberle, Boise, for respondents.

McQUADE, Justice.

During 1952, appellant city, Boise, re·· established a zoning plan which categorized properties into six basic classes:[1] The

1. Boise City Code, § 11–2–2 et seq., (1965) (1952 Code, § 7–101; 1936 Code § 13–102) classifies zones according to the following property uses: "A" and "B" Residence ("B" not subject to "A" building line and setback regulations), permitted uses, e. g., dwellings, schools, "fire stations built in residence style," greenhouses and nurseries; "C" Commercial, permitted uses, e. g., retail enterprises, newspaper plants, and certain light manufacturing plants; "D" Commercial, permitted uses, e. g., laundries, auto repair shops and service stations, and painting shops; "E"

"A" (Residence) Zone was the most strictly circumscribed use zone; the "F" (Unrestricted) Zone was the most permissive use zone. (Ordinance 1589). The zoning ordinance (1589) as re-enacted provided:

"The 'A' Residence Zone shall include all those parts of the City not specifically included within the limits of the other zones." Boise City Code, § 11–3–1 (1965) (1952 Code, § 7–102).

Respondents own and occupy real property located on three lots in Block Three of the Orr Subdivision in Boise. They had been using the improved portion of this property for "business and commercial" operations [2] within a general business area when, during 1963, appellant city annexed territory containing respondents' property. As found by the district judge, and supported by the record,[3] "no [affirmative] zoning has been undertaken" by appellant "with reference to plaintiff's [respondents'] property."

Appellant city contends that respondents' land, although—or perhaps more precisely, because—never specifically zoned by the city's officials (its Council or Zoning Board) falls into the highest use "A" Residence Zone due to § 11–3–1 of the code. Respondents argue that until positively zoned, their particular property must remain "unzoned." Before considering these opposing positions, however, an initial question must be determined: whether the judgment in a prior suit between the instant parties bars respondents from raising the zoning issue?

The earlier litigation developed when, on July 20, 1964, Boise City by Ordinance 2658 zoned certain areas into commercial and industrial zones but did not specifically include Gaige's and Seitz' [respondents herein] property, the subject of controversy in the present case, in any zone. On July 28, 1964, Gaige and Seitz filed a complaint in district court (Third Judicial District, Civ.Cs. No. 35206) alleging that they were "aggrieved" by Ordinance 2658 since, so they pleaded, it had ordered that their property could not be used for commercial purposes and that the city had "threatened * * * to enforce * * * said ordinance [2658]." In their complaint they prayed that the court:

"declare that Ordinance #2658 * * * insofar as the same pertains to Plaintiffs' [Gaige's and Seitz'] property * * *, constitutes an unreasonable exercise of power on the part of * * * the City of Boise * * * and that said ordinance is void."

Respondents in their complaint also sought an order enjoining Boise City's agents from "enforcing the provisions of said Ordinance 2658 with respect to Plaintiffs' [Gaige's and Seitz'] property."

On August 11, 1964, Boise City moved to dismiss the complaint for failure to state a claim upon which relief could be granted. Affixed to the motion was a copy of the City's Code, § 11–3–1, set out above, which relegates all unzoned "parts of the City" to the "A" Zone. On October 26, 1964, the court granted the motion to dismiss with

---

Industrial; and "F" Unrestricted. (During 1966 this basic plan was altered, increasing the categories and making them more specific).

The zones were cumulative, so that all the uses allowed in the "A" and "B" Zones were also permitted (with rare specific exceptions) in the "C" Zone, which in turn authorized additional uses. Each subsequently lettered zone encompassed the cumulative uses permitted by all preceding zones and allowed further uses. For example, the "F" Zone authorized "any use permitted in the 'A', 'B', 'C', 'D', and 'E', Zones and any use not prohibited by the laws of the city and for the following uses: [stating them]."

2. The specific use does not appear in the record but is irrelevant to consideration of the issues here presented.

3. In its assignments of error, the brief for appellant charges error in this finding. However, no authority or argument is stated to support the contention. See Idaho Sup.Ct.R. 41(2); Weaver v. Sibbett, 87 Idaho 387, 393 P.2d 601 (1964); cf. Jewett v. Williams, 84 Idaho 93, 104, 369 P.2d 590, 596 (1962).

leave to file an amended complaint and it is this order which appellants argue is res judicata of the cause of action in the instant case. The dismissal order in the earlier case noted that the ordinance there attacked (2658) did not affirmatively regulate the uses of Gaige's and Seitz' property, but merely left in effect the general ordinance, Boise City Code, § 11–3–1. In its order,[4] the court found that the general ordinance was not challenged by the complaint in that action and so the complaint in no way questioned the validity of § 11–3–1 in respect to the property involved. As a further ground for dismissal the judge noted,

"there does not appear to be any justiciable issue existing because it does

not appear that the City Code, Section 11–3–1, or that plaintiffs [Gaige and Seitz] have submitted plans for building, etc. to the City Building Inspector."

Dismissal was with leave to amend within ten days "if they [Gaige and Seitz] so desire." Gaige and Seitz did not appeal this order. They instituted the present suit on June 24, 1965, alleging two causes of action: first, they repeat their attack against Ordinance 2658; secondly, they contend that § 11–3–1 of the City Code does not regulate the use of their property, that their property remains unzoned until affirmatively zoned, and that if § 11–3–1 does apply to their property it is invalid because it extends beyond the city's power and is unconstitutional.

4. The substance of the court's dismissal order in Civ. Cs. No. 35206 states:
   "Plaintiffs allege that they are owners of certain property in Boise City which abuts upon Orchard Street; that said property is suitable only for commercial purposes; that the City Council passed Ordinance No. 2658 on July 20, 1964, a copy of which is attached to their Complaint. Said ordinance [No. 2658] zones certain areas along Orchard Street into commercial and industrial zones, but does not include plaintiffs' property in any of said zones; although plaintiffs allege that said ordinance classifies or zones their property as residential, it does not by its terms do so. The ordinance itself takes no *affirmative action* toward plaintiffs' property. It merely leaves in effect the general zoning ordinance of Boise City making all property in the City, which is not included within any other specified zone, as 'A' Residence Zone (Section 11–3–1 Boise City Code). It appears that the property in question was part of an area recently annexed to Boise City and at the time of annexation would be subject to all of the ordinances of Boise City then in existence (Sec. 50–304 I.C. and 50–124 I.C. [Idaho Code]). Thus it would appear on the face of it that the mere fact of annexation would cause all property annexed to be classified 'A' Residence Zone until the Council took affirmative action to change it into another type of zone.
   "It appears that plaintiffs' complaint, if any, lies against Section No. 11–3–1 of

Boise City Code, not the ordinance of which they complain in their pleadings.
   "I thus conclude that their Complaint does not state a claim that Ordinance No. 2658 is void because it violates due process or taking of their property without just compensation. It may be that Boise City cannot enforce Section 11–3–1 of its Code as it relates to newly annexed property, because such enforcement would amount to zoning without any apparent consideration of the factors mentioned in Chapter 4, Title 50, Idaho Code, and in particular be in violation of the provision in Section 50–404 Idaho Code which provides that 'no regulation, restriction or boundary shall become effective until after a public hearing in relation thereto, *at which parties in interest* and citizens shall have an opportunity to be heard. Further, do the provisions of Section 50–406 I.C. apply to newly annexed property?
   "These questions are not raised by this record and there does not appear to be any justiciable issue existing because it does not appear that the City has attempted to enforce the City Code Section 11–3–1, or that plaintiffs have submitted plans for building, etc., to the City Building Inspector.
   "Therefore, the motion to dismiss is granted, but because it appears that plaintiffs might be able to amend to state a claim, depending upon the actual situation, said dismissal is granted with leave to plaintiffs to file an amended Complaint within ten days if they so desire. IT IS SO ORDERED."

Two questions are presented for determination:

I. Whether the October 26, 1964 judgment in Third Judicial District Civil Case No. 35206 dismissing Gaige's and Seitz' earlier complaint, which had challenged the validity of Boise City Ordinance 2658 (of July 20, 1964) insofar as it affected their property, for failure to state a claim upon which relief could be granted, operates as res judicata and so prohibits consideration of the instant complaint against Boise City Code, § 11–3–1?

If question one is negatively answered,

II. Whether Boise City Code, § 11–3–1 (1965) which provides that "The 'A' Residence Zone shall include all those parts of the city not specifically included within the limits of the other zones," restricts the uses of real property annexed to the city after its (the ordinance's) enactment, before and unless the city positively otherwise zones such property, to the stated uses within the "A" Zone? If so, is the ordinance validly within statutory and constitutional permission?

(I). In an effort to define the res judicata issue precisely it should be noted that respondents initially presented two causes of action in the instant case: a repitition of their earlier challenge (Third Judicial District Civ.Cs. No. 35206) to Ordinance 2658; and an attack on Boise City Code, § 11–3–1. Appellants' answer contended that the order in Civ.Cs. 35206 was res judicata of both causes of action. After a preliminary hearing, respondents conceded this defense regarding the first cause, and abandoned that claim; the court, upon stipulation considering the issue preliminary to trial, decided that the order did not bar the second cause of action. Although the judgment below does not contain the court's reasons, its determination as to the second cause of action was correct.

■ Res judicata, literally "the matter having been judged," is a principle which bars relitigation of an issue which has been once properly decided. However, where the cause of action in the later case is different from that presented in an earlier suit, and the issue raised in the later action was not determined in the earlier,[5] the judgment in the earlier suit will not bar the later cause of action. Intermountain Food Equipment Co. v. Waller, 86 Idaho 94, 383 P.2d 612 (1963). The pres-

5. Appellants cite three cases decided by this court to support its contention that a prior judgment binds "also as to every matter or issue which might and should have been litigated in the first action." The brief does not interpret the terms "might and should have been litigated," but obviously appellant believes that they pertain to the situation here, namely: an earlier complaint against Ordinance "X," dismissed for failure to state a proper claim because "X" in no way positively affects the complainant's interest; a later suit by the same party challenging Ordinance "Y," assuming that "Y" does touch the same interest. However, not one of the cited cases, all of which concern earlier judgments after full trial, sustains appellants' position with regard to the facts herein as presented in the preceding sentence. This is perhaps best illustrated by excerpts from each case of statements supported by its facts.

In Joyce v. Murphy Land & Irrigation Co., 35 Idaho 549, 208 P. 241 (1922) this court found "upon the findings of fact, conclusions of law, and the decree in the Joyce-Rubin case [former action alleged as res judicata] * * * the issues in the instant case were before the court in the former action, and the rights of the parties * * * determined." Id. at 553, 208 P. at 242.

In South Boise Water Co. v. McDonald, 50 Idaho 409, 296 P. 591 (1931), respective rights concerning water were contested in both the earlier and later cases. The two suits had, this court said, "identity of the parties, identity of the causes of action, identity of the thing sued for." Id. at 414, 296 P. at 592.

In Village of Heyburn v. Security Savings & Trust Co., 55 Idaho 732, 49 P.2d 258 (1935), this court stated "No different fact whatsoever is in issue in this case from what was in issue in the former case. The difference exists only in the prayers of the respective complaints and answers and in that respect no substantial difference exists." Id. at 745, 49 P.2d at 264.

ent case, challenging Ordinance 1589, presents a distinct cause of action from the earlier case (Civ. 35206) which alleged that Ordinance 2658, enacted in 1964, affirmatively, but improperly, regulated the use of Gaige's and Seitz' property. The two ordinances constitute separate and, within the present context, unrelated governmental regulations upon the use of Gaige's and Seitz' property. Thus, if either ordinance illegally encroached upon a protected interest of respondents, a distinct cause of action would arise. Cf. Intermountain Food Equipment Co. v. Waller, supra; Mochel v. Cleveland, 51 Idaho 468, 478, 5 P.2d 549, 552 (1930).

The order dismissing the complaint in the earlier action states, "there does not appear to be any justiciable issue existing because it does not appear that the City has attempted to enforce the City Code Section 11–3–1." This suggests that the subject of controversy in the present case, the validity of § 11–3–1 with respect to respondents' property, was not then ripe for adjudication. Cf. Schmidt v. Village of Kimberly, 74 Idaho 48, 62–63, 256 P.2d 515, 524 (1953). This situation has changed, or so the trial judge here (who also decided the earlier case, Civ. 35206) implicitly found by determining the issue concerning the effect of § 11–3–1. Cf. National Ro-Tile Corp. v. Loomis, 82 Idaho 65, 350 P.2d 217 (1960).

■ The defense of res judicata, then, as found by the trial court, does not bar determination of the question whether Boise City Code, § 11–3–1 encompasses the zoning of respondents' property and, if so, validly regulates its use. Consideration of the zoning issue is thus in order.

(II). The trial judge found that § 11–3–1 "applies only to land which was in the City at the time of [its] enactment * * * 1952." This court concludes that this determination is correct and so will not consider appellants' arguments that § 11–3–1 would be unconstitutional, under the Federal and Idaho Constitutions, if it did encompass and regulate the use of respondents' property.

By its terms, that the "A" Zone "shall include all those parts of the City not specifically included" in other zones, § 11–3–1 does not specifically purport to affect areas not "parts of the City" at its enactment. Indeed, the phrase "parts of the City" contains no hint that territory subsequently annexed, and so necessarily not among "parts of the City" at the time of its adoption, comes within the scope of § 11–3–1. See McQuillan, Municipal Corporations, § 25.72 (3d ed. Ellard 1965):

> "Certainly, zoning restrictions or regulations which limit the right to use private property so as to realize its highest utility should not be extended by implication to cases not clearly within their scope and purposes."

See Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016 (1926).

An examination of the Idaho zoning statutes reinforces the conclusion that the Boise City Council did not intend § 11–3–1 to regulate automatically the use of property subsequently annexed to the city. I. C. § 50–401 provides in part that zoning power is granted to certain municipal entities "For the purpose of promoting health, safety, morals, or the general welfare of the community."[6] See White v. City of Twin Falls, 81 Idaho 176, 338 P.2d 778 (1959). Zoning regulations "shall be made in accordance with a comprehensive plan" and designed with a number of expressly

6. The initial section in Title XI, "ZONING," of the Boise City Code, enacted in 1952 and in force at all pertinent times, states "INTERPRETATION: PURPOSE: In interpreting and applying the provisions of this Title, they shall be held to be the minimum requirements adopted for the promotion of health, safety, morals, comfort, convenience or the general welfare." Boise City Code, § 11–1–1 (1965).

stated "Purposes in view." I.C. § 50–403. See White v. City of Twin Falls, supra. "Reasonable consideration" shall be directed:

"among other things, * * * to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality." Ibid.

Cf. Herzog v. City of Pocatello, 83 Idaho 365, 363 P.2d 188 (1961). Procedures for establishing zones are regulated by I.C. § 50–404 which provides in part:

"no such regulation, restriction or boundary shall become effective until after a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard."

See Herzog v. City of Pocatello, 82 Idaho 505, 356 P.2d 54 (1960); cf. I.C. § 50–405; 50–406.

■■■ The statutory law partially set out in the preceding paragraph restricts a municipality's authority in an attempt to insure full consideration of a particular property's pertinent attributes, in light of public welfare principles, prior to exercise of zoning power. Section 11–3–1 of the City's Code must be construed, and its intent ascertained, within the context of Idaho's zoning statutes. The statutory policy demanding full investigation prior to zoning clarifies that the city could not intend by § 11–3–1 automatically to zone later annexed property into the highest use category.

Appellant city urges, however, that two Idaho statutes concerning annexation, I.C. §§ 50–304 and 50–305 (Supp.1965), compel resolution of the zoning issue in its favor. I.C. § 50–304 provides in part that upon annexation:

"All property and persons within the limits of such annexed tract of land shall be subject to the provisions of all by-laws and ordinances of the said city, town or village, and to the police regulations thereunder."

This statute, however, lends no support to appellants' specific contention that respondents' property automatically became "A" Residence use property upon its annexation. The same Boise ordinance (1589) which provided that the "A" Zone would encompass all "parts of the City" not otherwise zoned also established six basic categories of property use and delineated their characteristics, (see footnote 1). This scheme manifests appellant city's intent carefully to pre-consider different areas and specific properties in order intelligently to classify each location. Thus, when read as a whole, Ordinance 1589 is opposed to appellants' argument. Appellants' contention in this regard also overlooks the obvious thrust of the Idaho zoning statutes partially set out a few paragraphs above, e. g. I.C. §§ 50–401, 50–403, and 50–404.

I.C. § 50–305 (Supp.1965), also cited by appellants provides in part that upon annexation all property and inhabitants within the annexed territory:

"shall be subject to taxation, as other property and persons within the corporate limits * * *, as though said annexed portion had been a part of the [annexing unit] * * * from the date of its [the annexing unit's] incorporation."

Appellants argue that I.C. § 50–305, while only treating taxation, shows an intent that upon annexation the new addition to the municipality be automatically worthy of all benefits and subject to all liabilities of city government, "subject only to the rule that existing property rights cannot willy-nilly be abrogated." This statement is true in the abstract but it does not support the conclusion for which appellants contend, and when applied to the facts of this case the argument becomes self-defeating. Respondents, admitting that their

property "is automatically subject" to appellant city's power to zone, deny only that their property be arbitrarily relegated to the "A" Zone before appellants have affirmatively exercised their zoning power in respect to their property, as contemplated by Ordinance 1589. Further, appellants' reliance upon the analogy of I.C. § 50–305 defeats itself for, obviously, property studies and assessments by a municipality must precede its levies and collection of the precise amount of taxes to which the annexed land "shall be subject."

Judgment affirmed. Costs to respondents.

TAYLOR, C. J., and SMITH, McFADDEN and SPEAR, JJ., concur.