621 P.2d 399

POCATELLO INDUSTRIAL PARK CO., an Idaho Partnership; and Insurance Company of North America, a Pennsylvania Corporation licensed to do business in the State of Idaho, Plaintiff-Appellants, Cross-Respondents,

v.

STEEL WEST, INC., an Idaho corporation; and Industrial Indemnity Company, a California corporation licensed to do business in the State of Idaho, Defendant-Respondents, Cross-Appellants.

No. 12636.

Supreme Court of Idaho.

Dec. 9, 1980.

Phillip M. Barber, of Elam, Burke, Evans, Boyd & Koontz, Boise, for plaintiffs-appellants, cross-respondents.

Craig L. Meadows, of Hawley, Troxell, Ennis & Hawley, Boise, for defendants-respondents, cross-appellants.

BAKES, Justice.

This is an appeal from a summary judgment entered in favor of defendant Steel West, Inc., and its compensation and liability insurance carrier, Industrial Indemnity Company (IIC).

Steel West had leased the northern two-thirds of a building from plaintiff appellant Pocatello Industrial Park Company. Croft, an employee of Steel West, was injured when a malfunctioning cement door at the southern end of the building fell upon him. Croft was paid $14,128.01 in workmen's compensation benefits and medical expenses by IIC, Steel West's workmen's compensation carrier. Croft then sued Pocatello Industrial for injuries and damages suffered in the accident. The case was tried before a district court judge commencing February 4, 1975. Pocatello Industrial was the only defendant. IIC was not a party to the Croft action. Although counsel for IIC was present in court during the Croft trial, he did not participate.

On March 18, 1975, the trial court issued its memorandum opinion in the Croft action. The court allocated the comparative negligence as follows: Pocatello Industrial, 80%, and Croft, 20%. The court first reduced Croft's total damages of $80,870.45 by 20%, or $16,174.09, the percentage of negligence attributable to Croft. See I.C. § 6–801. Next, the court reduced the award by "the subrogated amount of $14,-128.01 due [the] Workmen's Compensation carrier," resulting in a "net to plaintiff of $50,568.35, together with costs." See I.C. § 72–223(3). The court's subsequent findings of fact and conclusions of law, signed June 11, 1975, reflected this same ruling. "[P]laintiff was awarded 80% of the sum of the general and special damages minus the subrogated amount due the workmen's compensation carrier . . . ."

Thereafter, the defendant in the Croft action, Pocatello Industrial Park, entered objections to the court's findings and conclusions. It argued, among other things, that the negligence of the plaintiff Croft was equal to or greater than that of the defendant. After a hearing, the court issued an order dated July 30, 1975, amending its prior findings and conclusions. While the court rejected Pocatello Industrial's contention that Croft's negligence was equal to or greater than its own, the court did feel that the allocation of 80% of comparative fault to Pocatello Industrial was too high, and thus modified the original decision to hold that defendant's negligence was 72% and the plaintiff's 28%. The court modified Croft's recovery accordingly, reducing it by 28% instead of 20%. However, in its order the court stated that Croft's award was "subject to any lien or subrogation rights of the compensation carrier which may be according to law," rather than reducing the recovery by the amount Croft previously received in compensation benefits as it had earlier done. The court ordered that new documents be prepared to reflect these changes.

On October 16, 1975, the court signed "Amended Findings of Fact and Conclusions of Law." This time it was stated that Croft's award was "subject however, to any lien or subrogation rights of the compensation carrier."

Pocatello Industrial's insurance carrier, Insurance Company of North America (INA), satisfied the Croft judgment. INA and Pocatello Industrial then commenced the instant action against Steel West and IIC. Their complaint was premised on three alternative theories: contractual indemnity; implied or common law indemnity; and contribution.

Defendants Steel West and IIC moved for summary judgment, primarily on the grounds that the doctrines of *res judicata* or

collateral estoppel precluded plaintiffs from relitigating issues common to both this action and the prior Croft action. The trial judge, the same judge who had sat on the Croft case, entered summary judgment for defendants, and this appeal followed.

I

The first issue we address concerns the applicability of the doctrines of *res judicata* or collateral estoppel. *Res judicata* is generally invoked to bar a subsequent suit between the same parties or their privies *upon the same cause of action. Idaho State University v. Mitchell*, 97 Idaho 724, 552 P.2d 776 (1976); 1B Moore's Federal Practice ¶ 0.441[1] (2d ed. 1965). *See In re Russell*, 12 Cal.3d 229, 115 Cal.Rptr. 511, 524 P.2d 1295 (1974); *Seattle First Nat. Bank v. Kawachi*, 91 Wash.2d 223, 588 P.2d 725 (1978). Since the Croft case involved different parties and different causes of action,[1] all the parties to this case agree that we are dealing only with collateral estoppel.

In order for the doctrine of collateral estoppel to apply, the issue in question must have *actually* been litigated and resolved in the prior suit. *See Duff v. Draper*, 96 Idaho 299, 527 P.2d 1257 (1974); 1B Moore's Federal Practice ¶ 0.443[5] (2d ed. 1965). *Cf. Green v. Gough*, 96 Idaho 927, 539 P.2d 280 (1975); *Gaige v. City of Boise*, 91 Idaho 481, 425 P.2d 52 (1967); *Intermountain Food Equipment Co. v. Waller*, 86 Idaho 94, 383 P.2d 612 (1963); (cited opinions apply a similar rule to cases involving doctrine of *res judicata*).

For the reasons set forth below, we cannot, based on the record before us, hold that the issue of the employer Steel West's negligence was actually litigated in the Croft action.[2] First, nowhere in the court's memorandum opinion, findings of fact and conclusions of law, or judgment is there any mention made of Steel West's negligence. If that issue was in fact litigated, we would expect the trial court to have concluded that Steel West's negligence was "0%", or that Steel West had no legal duty to maintain the malfunctioning door, or something to the effect that Steel West was not negligent.

Secondly, the trial court did find that "all parties," including the management of Steel West and many of its employees, were aware that the door was malfunctioning. The court also found that Steel West employees "circumvented the electrical, mechanical system by activating the same with a stick and further, by manually opening and closing the lower door subsequent to the removal of the chain drive." While we cannot conclude from those findings alone that the trial court considered Steel West to be negligent, nonetheless, considering the involvement of Steel West employees in operating and altering the door mechanism, we do conclude that the court on summary judgment below erred in holding as a matter of law that the trial court in the Croft action had found that Steel West was not guilty of any negligence in connection with Croft's accident.

Thirdly, in its memorandum opinion, the trial court listed Pocatello Industrial's three defenses to Croft's claim. None of these defenses involved the matter of Steel West's negligence. If indeed Steel West's negligence was asserted as a defense to a portion of Croft's claim, we would expect the trial court to have so stated.

Finally, IIC and Steel West were not parties to the Croft action. The trial court might have felt that it was precluded from apportioning any negligence to Steel West due to its status as a non-party.[3] If that be

---

1. The Croft action was a negligence suit. Here, Pocatello Industrial's claim was based alternatively on either a written contract of indemnity, implied indemnity, or contribution.

2. Because we deem collateral estoppel inapplicable on this ground, we need not address the problem created by the fact that neither Steel West nor IIC was a party in the prior action.

*See Idaho State University v. Mitchell*, 97 Idaho 724, 552 P.2d 776 (1976); Annot., 31 A.L.R.3d 1044 (1970); Annot., 24 A.L.R.2d 329 (1952).

3. In his memorandum opinion issued in the Croft action, the trial judge wrote: "Under the Idaho Comparative Negligence Statute, it is the duty of the trier of fact to allocate the degree or percentage of negligence to the respective par-

the case, we think the trial court erred. The inclusion of non-parties in the special verdict is apparently a question of first impression in Idaho, although we have reviewed other cases in which negligence was apportioned to a non-party. *Tucker v. Union Oil Co. of California*, 100 Idaho 590, 603 P.2d 156 (1979); *Jensen v. Shank*, 99 Idaho 565, 585 P.2d 1276 (1978). In neither case did we comment on the practice. We now adopt the rule which was suggested by *Tucker* and *Jensen* and which is clearly the prevalent practice among state courts.[4]

> "It is established without doubt that, when apportioning negligence, a jury must have the opportunity to consider the negligence of all parties to the transaction, whether or not they be parties to the lawsuit and whether or not they can be liable to the plaintiff or to the other tortfeasors either by operation of law or because of a prior release." *Connar v. West Shore Equipment of Milwaukee, Inc.*, 68 Wis.2d 42, 227 N.W.2d 660, 662 (1975).

"The reason for such [a rule] is that true apportionment cannot be achieved unless that apportionment includes all tortfeasors guilty of causal negligence either causing or contributing to the occurrence in question, whether or not they are parties to the case." Heft & Heft, Comparative Negligence Manual § 8.131, at 12 (1978). Apparently, only Florida has adopted a contrary rule. *Id.; Davis v. Lewis*, 331 So.2d 320 (Fla.App.1976), *cert. denied* 348 So.2d 946 (Fla.1977); *Model v. Rabinowitz*, 313 So.2d 59 (Fla.App.1975), *cert. denied* 327 So.2d 34 (Fla.1976); *Echeverria v. Barczak*, 308 So.2d 633 (Fla.App.1975), *cert. denied* 321 So.2d 558 (Fla.1975).

It must also be remembered that this is an appeal from a summary judgment, and therefore we are to liberally construe the record in favor of the party opposing the summary judgment. *E. g., Farm Bureau Finance Co., Inc. v. Carney*, 100 Idaho 745, 605 P.2d 509 (1980); *State Tax Comm'n v. Western Electronics, Inc.*, 99 Idaho 226, 580 P.2d 72 (1978). Moreover, the party seeking to bind another by a prior judgment has the burden of proving that the requirements of collateral estoppel have been met. *Peters v. Missouri-Pacific Railroad Co.*, 483 F.2d 490 (5th Cir. 1973), *cert. denied* 414 U.S. 1002, 94 S.Ct. 356, 38 L.Ed.2d 238 (1973); *United States v. Friedland*, 391 F.2d 378 (2d Cir. 1968) *cert. denied* 404 U.S. 867, 914, 92 S.Ct. 143, 239, 30 L.Ed.2d 111, 188 (1971); *State ex rel. Turk v. District Court*, 581 P.2d 433 (Mont.1978); *State Farm Fire & Casualty Co. v. Century Home Components, Inc.*, 275 Or. 97, 550 P.2d 1185 (1976). In order to satisfy that burden, a party may resort to extrinsic evidence if the pleadings, judgment or court opinion in the prior action do not demonstrate that the precise issue had been actually litigated and resolved in the prior suit. *State ex rel. Turk v. District Court, supra; State Farm Fire & Casualty Co. v. Century Home Components, Inc., supra.* Cf. *Marshall v. Underwood*, 38 Idaho 464, 221 P. 1105 (1923) (applying similar rule in *res judicata* case). To this end, Steel West has failed to produce any brief, transcript, pleading or other document pertaining to the Croft action which demonstrates that Steel West's negligence was a litigated issue.

---

ties, considering that the total negligence equals 100%."

4. Pocatello Industrial contends that the reference to the term "party" in our comparative negligence statute, I.C. § 6–802, implies that only parties may be included in the special verdict:

> "6–802. VERDICT GIVING PERCENTAGE OF NEGLIGENCE ATTRIBUTABLE TO EACH PARTY.—The court may, and when requested by any party shall, direct the jury to find separate special verdicts determining the amount of damages and the percentage of

negligence attributable to each party; and the court shall then reduce the amount of such damages in proportion to the amount of negligence attributable to the person recovering."

While the statute requires that parties be included in the special verdict, it does not state that *only* parties shall be included. Minnesota's comparative negligence statute, Minn.Stat. § 604.01, is identical to ours and the Minnesota Supreme Court has also concluded that non-parties may be included in the special verdict. *Lines v. Ryan*, 272 N.W.2d 896 (Minn.1978).

Steel West does, however, point out one troublesome matter. In the Croft action, the trial court appeared to recognize that IIC was subrogated to Croft's recovery to the extent of its compensation liability. *See* I.C. § 72–223(3).[5] Steel West directs our attention to the case of *Liberty Mutual Insurance Co. v. Adams*, 91 Idaho 151, 417 P.2d 417 (1966), in which we held that a negligent employer is not entitled to subrogation rights against the employee's recovery from concurrently negligent third parties. Steel West argues that the trial court's recognition of Steel West's subrogation rights necessarily implies that the court must have concluded that Steel West was not at all negligent.[6] We disagree. The record simply does not indicate why, as a legal or factual matter, the Croft trial court dealt with IIC's subrogation interest in the manner that it did.

First, it is not so clear that the trial court in the Croft action actually determined that IIC had subrogation rights.[7] In its initial memorandum opinion and conclusions of law, the court reduced Croft's recovery by "the subrogated amount due" IIC. *See Tucker v. Union Oil Co. of California*, 100 Idaho 590, 603 P.2d 156 (1979). In its amending order, the court noted only that Croft's recovery was "subject to any ... subrogation rights ... which *may be* according to law." (Emphasis added.) This language is hardly conclusive and would appear to indicate only that Croft's recovery was subject to any of IIC's rights *which might exist.* In the amended conclusion of law, the phrase "which may be according to law" was omitted, but we have no indica-

tion why this was done or whether it was done intentionally, just as we have no indication why the court switched from reducing Croft's recovery to merely making it "subject to" any rights of the compensation carrier.

Secondly, we have no indication that the trial court considered the ramifications of the *Liberty Mutual* rule *vis-a-vis* Steel West's negligence. Furthermore, *Liberty Mutual* was decided prior to the Idaho legislature's adoption of a comparative negligence statute, I.C. § 6–801. For that reason, the status of the *Liberty Mutual* rule barring subrogation is currently unknown. In fact, in *Tucker v. Union Oil Co. of California*, 100 Idaho 590, 603 P.2d 156 (1979), that question was expressly reserved for another day.

It should be evident at this point that we are operating in the dark with respect to the true import of the trial court's recognition of IIC's subrogation rights. Considering the state of the record and the stage of this controversy, Steel West has fallen well short of satisfying its burden. Regarding the related doctrine of *res judicata*, this Court has stated that "in order that this rule should apply, it must *clearly* and *positively appear*, either from the record itself or by the aid of competent extrinsic evidence, *that the precise point or question in the second suit was involved and decided in the first." Marshall v. Underwood*, 38 Idaho 464, 466, 221 P. 1105, 1105 (1923) (emphasis added). On this record it does not so clearly appear. For that reason, we conclude that the doctrine of collateral estoppel does not prevent Pocatello Industrial from

---

**5.** "72–223. THIRD PARTY LIABILITY.— ...
"(3) If compensation has been claimed and awarded, the employer having paid such compensation or having become liable therefor, shall be subrogated to the rights of the employee, to recover against such third party to the extent of the employer's compensation liability. ...."

**6.** Collateral estoppel will operate to bind a party even on issues not expressly resolved in the prior suit, if the resolution of such issues can be necessarily or inevitably inferred. 1B Moore's Federal Practice ¶ 0.443[4] (2 ed. 1965).

**7.** IIC asserts that in the Croft action it was allowed a subrogation lien. However, we fail to see how the trial court's judgment in the Croft action could conclusively adjudicate the rights and obligations of non-parties. If Steel West or IIC desired to have their subrogation rights determined, they should have joined with Croft in instituting the action against Pocatello Industrial. *See McDrummond v. Montgomery Elevator Co.*, 97 Idaho 679, 551 P.2d 966 (1976); *Lebak v. Nelson*, 62 Idaho 96, 107 P.2d 1054 (1940); I.R.C.P. 20(a).

trying the issue of Steel West's negligence in this case.

## II

Having disposed of the threshold legal issue in this case, we turn now to the question of whether there exists any genuine issues of material fact which would preclude entry of summary judgment on behalf of defendant respondents Steel West and IIC. Pocatello Industrial's claim was premised on three theories: contribution, contractual indemnity and common law or ·implied indemnity. Pocatello Industrial has since abandoned its claim for contribution, and therefore we need examine only its indemnity claims.

■ Pocatello Industrial claims that it is entitled to indemnity from Steel West on the basis of the following clause found in the parties' lease:

"Lessee [Steel West] agrees to indemnify and hold Lessor [Pocatello Industrial] harmless against any and all liability for injury to or death of persons, or loss of or damage to property of Lessee or others, arising from the Lessee's possession or use of the leased premises, howsoever occurring, except as a result of Lessor's sole negligence."

In response, Steel West points out that Croft's injury occurred at the southern end of the building in an area not leased by Steel West. Therefore, Steel West asserts, the injury did not arise from its possession or use of the leased premises, but rather from its use of the *un*leased premises. The above clause is, however, subject to another interpretation. The indemnity provision does not require that the accident actually occur on the leased premises; only that it *arise from* Steel West's possession or use of the same. The trial court's memorandum opinion in the Croft action indicates that Steel West found it necessary to use the cement door at the southern end of the building. Although there was an access door on the portion of the premises leased by Steel West, it was apparently not large enough to accommodate some of the larger items which Steel West needed to move out of the building. Therefore, to the extent

that Steel West's use of the leased premises necessitated its use of the malfunctioning south door, the injury arguably arose from its use of the leased premises.

■ We think the disputed indemnity provision can be read either as requiring that the injury occur on the premises or as requiring only that there exists some logical nexus between the injury and Steel West's use of the premises. Where the terms of a contract are ambiguous, its interpretation presents a question of fact. *Werry v. Phillips Petroleum Co.*, 97 Idaho 130, 540 P.2d 792 (1975); *National Produce Distributors, Inc. v. Miles & Meyer, Inc.*, 75 Idaho 460, 274 P.2d 831 (1954). The interpretation of this indemnity provision therefore raises an issue of material fact.

Steel West also raises an alternative argument. It points out that Pocatello Industrial paid only 72% of Croft's injuries, in accordance with the percentage of fault allocated Pocatello Industrial in the Croft action. Therefore, Steel West argues, Pocatello Industrial's "liability" occurred "as a result of [its] sole negligence," thus evoking the exception clause of the indemnity provision. We think Steel West's interpretation of the exception clause is a strained one. It seems more likely that the clause was intended to apply only where the *injury* occurred solely as a result of Pocatello Indus-. trial's negligence. Nonetheless, we leave the resolution of that possible ambiguity for the trial court as well.

## III

■ Pocatello Industrial's alternative indemnity claim is based on a theory of common law or implied indemnity. This cause of action is premised on the allegation that Steel West was actively and primarily negligent in causing Croft's injury, whereas Pocatello Industrial was only passively and secondarily negligent. Such a theory, or one substantially like it, was recognized and approved by this Court in *May Trucking Co. v. Int'l Harvester Co.*, 97 Idaho 319, 543 P.2d 1159 (1975). *See Industrial Indemnity Co. v. Columbia Basin Steel & Iron, Inc.*, 93 Idaho 719, 471 P.2d 574 (1970); *American*

*District Telegraph Co. v. Kittleson,* 179 F.2d 946 (8th Cir. 1950); *Lunderberg v. Bierman,* 241 Minn. 349, 63 N.W.2d 355 (1954); *McDonnell Aircraft Corp. v. Hartman-Hanks-Walsh Printing Co.,* 323 S.W.2d 788 (Mo.1959); *Dole v. Dow Chemical Co.,* 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972); *United States Fidelity & Guaranty Co. v. Kaiser Gypsum Co., Inc.,* 273 Or. 162, 539 P.2d 1065 (1975). *See generally,* 2A Larson, Workmen's Compensation Law § 76 (1974) [hereinafter cited as "Larson"].

In view of our disposition of the collateral estoppel question, it seems clear that there remain numerous factual issues which prevent the entry of summary judgment on Pocatello Industrial's common law indemnity claim. Had we decided that collateral estoppel was applicable, Pocatello Industrial would of course be estopped from asserting that Steel West was negligent in any form. We did not so decide, however, and therefore for purposes of this controversy both the *extent and nature* of Steel West's comparative fault are unresolved and unlitigated issues. These issues of fact preclude entry of summary judgment on behalf of Steel West.

### IV

■ Steel West asks us to interpret the meaning of I.C. § 72–209(2), which reads as follows:

"72–209. EXCLUSIVENESS OF LIABILITY OF EMPLOYER.—

. . . . .

(2) The liability of an employer to another person who may be liable for or who has paid damages on account of an injury or occupational disease or death arising out of and in the course of employment of an employee of the employer and caused by the breach of any duty or obligation owed by the employer to such other person, shall be limited to the amount of compensation for which the employer is liable under this law on account of such injury, disease, or death, unless such other person and the employer agree to share liability in a different manner.

. . . . ."

Steel West asserts that this provision operates to limit its exposure to Pocatello Industrial's common law indemnity claim to the amount for which it was liable under the workmen's compensation law. We agree.

At first glance, it might seem odd that a claim for implied indemnity such as the one at bar arises out of "the breach of any duty or obligation owed by the employer to such other person," in this case, Pocatello Industrial. Certainly, the legislature could have clarified matters by specifically limiting the common law right of a third party to indemnity where workmen's compensation is involved. In particular, use of the term "indemnity" would have been advisable.

Fortunately, a review of the history surrounding the model act from which it was taken illuminates the seemingly darkened legislative intent behind I.C. § 72–209(2). Most jurisdictions "allow a third party to recover indemnity from an employer when the injury to the employee for which the third party was held liable resulted from the breach of an independent duty owed to the third party by the employer. This duty will be implied by law from the relationship between the employer and the party seeking indemnity." *United States Fidelity & Guaranty Co. v. Kaiser Gypsum Co., Inc.,* 273 Or. 162, 539 P.2d 1065, 1072 (1975). *See* 2A Larson §§ 76.10 & 76.40. Since the right to indemnification in workmen's compensation cases generally arises out of the employer's "breach of [a] duty or obligation owed" to the third party, it seems clear that I.C. § 72–209(2) was intended to put a ceiling on third party indemnity claims against the employer, except in those cases where the claim is based on an express contractual indemnity provision.

This conclusion is strongly buttressed by consideration of the source of the statutory provision in question. The Idaho legislature borrowed I.C. § 72–209(2) from a model state workmen's compensation act. The Council of State Governments, Workmen's Compensation & Rehabilitation Law § 10 (Jan. 1973). The provision in question has

not been well received by state legislators. In fact, besides Idaho, only Kentucky seems to have adopted it. Ky.Rev.Stat. § 342.-690(1). Kentucky courts have yet to interpret this troublesome language.

Fortunately, the commentary to the model act, authored by Professor Larson, is of much greater assistance. Professor Larson writes:

"The [provision in question adopts] a definite disposition of one of the most evenly balanced questions that has arisen related to workmen's compensation. This is a question which has nothing to do with the rights of the employee, but which affects the relative rights of an employer and a negligent third party, when the negligence of both the employer and the third party have in some degree contributed to the employee's injury. The basic problem is well illustrated by the case of *American District Telegraph Co. v. Kittleson* (C.C.A. 8) 179 F.2d 946 (1950)." Workmen's Compensation & Rehabilitation Law, *supra* at 105–06.

Professor Larson goes on to discuss the *Kittleson* case, in which the 8th Circuit upheld the third party's right against the employer for *total* indemnity "on the theory of an implied promise of a primary tortfeasor to reimburse a secondary tortfeasor." *Id.* at 106. Professor Larson concludes:

"The suggested draft deliberately adopts a conclusion somewhat different from that of the *Kittleson* case, but more in line with some of the other decisions on the subject. The solution adopted by the draft is to some degree a compromise, in that the employer is relieved of the kind. of complete liability imposed in the *Kittleson* case, but is obliged to pay the third party damages up to the amount of the compensation and other benefits for which the employer is liable under the act—always assuming that there are adequate grounds, quite apart from the compensation act, for holding the employer liable to the third party." *Id.* at 106.

We of course express no opinion with respect to Pocatello Industrial's ultimate entitlement to recover on a theory of common law indemnity. Hence we do not intend to imply that Pocatello Industrial's negligence was passive and Steel West's negligence, if any, was active. We hold only that, in the event that Pocatello Industrial prevails on its common law or implied indemnity claim, Steel West is obligated only up to the amount of the compensation and other benefits for which it is liable under the act.[8]

## IV

■ Finally, IIC contends that it should be dismissed from the suit on the grounds that Pocatello Industrial has no direct cause of action against IIC as Steel West's liability insurer. We agree. It is well established that absent a contractual or statutory provision authorizing the action, an insurance carrier cannot be sued directly and cannot be joined as a party defendant. *Olokele Sugar Co. v. McCabe, Hamilton & Renny Co.*, 53 Haw. 69, 487 P.2d 769 (1971); *Sears, Roebuck & Co. v. Employers Mutual Liability Ins. Co. of Wisconsin*, 6 Ill.App.3d 10, 284 N.E.2d 386 (1972); *Royal Indemnity Co. v. Aetna Casualty & Surety Co.*, 193 Neb. 752, 229 N.W.2d 183 (1975); *Chapman v. Farmers Ins. Group*, 90 N.M. 18, 558 P.2d 1157 (N.M.App.1976), *cert. denied*, 90 N.M. 254, 561 P.2d 1347 (1977). *See generally* R. 2 Long, Law of Liability Insurance §§ 20.-01–20.06 (1966). In fact, Steel West's liability insurance policy with IIC specifically prohibits direct action against the insurance company. We are aware of no direct action statute in Idaho. Thus, Pocatello Industrial cannot maintain an action against IIC at this stage of the controversy.

Accordingly, the judgment of the trial court is affirmed in part and reversed in part and remanded for further proceedings consistent with this opinion.

DONALDSON, C. J., and SHEPARD, McFADDEN and BISTLINE, JJ., concur.

---

8. The limitation on the employer's liability to third parties does *not* apply, according to I.C. § 72–209(2), when the third party "and the employer agree to share liability in a different manner." The employer and third party may, for example, remove the statutory ceiling with an indemnity agreement.