425 So.2d 166 (1983)
William E. BLOCKER, Robert A. Blocker, J. Frank Blocker, D/B/a Blockers House Movers and Leader National Insurance Company, a Foreign Corporation Authorized to Do Business in Florida, Appellants,
v.
Lola Denise WYNN, As Personal Representative of the Estate of Robert James Wynn, Deceased, Appellee.
No. AL-245.
District Court of Appeal of Florida, First District.
January 7, 1983.
Rehearing Denied February 2, 1983.
*167 Patrick J. Farrell, Jr. of Fuller & Johnson, P.A., Tallahassee, for appellants.
Michael F. Coppins of Douglass, Davey & Cooper, Tallahassee, for appellee.
LARRY G. SMITH, Judge.
Appellants appeal from a jury verdict in favor of the plaintiff in a wrongful death action. We affirm.
This action arose out of a tragic accident which occurred on the Swamp Creek Bridge in Gadsden County. Plaintiff's decedent, Bucky Wynn, was 19 at the time of his death. He and the plaintiff, Denise Wynn, had been married less than a year. Decedent drove a dump truck for Chance Hauling and Paving, Inc., and at the time of the accident was hauling a truck load of sand. At the time decedent began his fatal trip, appellants were engaged in moving a house across the Swamp Creek Bridge.
While the house was on the bridge it completely blocked both lanes of traffic. Robert Blocker had driven the escort vehicle a mile and a half up the road to an intersection where he parked on the side of the road so that he could stop traffic and prevent people from driving down the two-lane highway to the bridge. He could not see the house from where he parked, the bridge being down the hill and around a curve from his position. The escort vehicle had a flashing yellow light on top, but no signs. He usually carried a red flag to stop approaching vehicles, but it was not in the truck that day. Wynn's truck and two more vehicles got past the escort vehicle while Robert was looking for the flag. The testimony indicates that decedent should have been able to see the house from approximately 1,024 feet away, downhill and around the curve. The weather was clear and dry. Just before impact, decedent's truck swerved to the left of the pulling truck, then went through the house, exiting on the right side, and crashed through the guardrail of the bridge, coming to rest upside down in the creek. Witnesses testified that Wynn was apparently alive when he crashed through the side of the bridge, but they were unable to pull him from the submerged truck.
Decedent's employer testified that the truck brakes were relined two months before the accident. Parts were cannibalized from the wrecked truck before the employer was told to leave it alone so that it could be examined by experts. Denise testified that decedent never complained to her about his job or the brakes on the truck. However, two of decedent's friends testified that he had complained to them about the brakes on the truck, and that he could only stop the truck by gearing down. Appellants' expert testified that the brakes had been improperly repaired, and were in poor condition. He said that the stopping distance for good brakes on that road and grade with the load the truck was carrying was 301 feet. Based on the conditions the brakes were in, it would have taken decedent 1,264 feet to stop, that is, 264 feet through the house, at best.
The jury found appellants 80% negligent, and decedent 20% negligent. They fixed the amount of damages at $240,000.00. Appellants' various post-trial motions were denied, and appellants appealed. Only one of the issues raised requires discussion.
*168 Appellants urge error in the trial judge's refusal to instruct the jury that they could apportion the negligence of the employer, thus reducing appellants' liability by the proportionate amount of fault attributable to the employer. After retracing the history of the present day apportionment and contribution rules, we find that we are unable to agree with appellants.
The Supreme Court of Florida in Hoffman v. Jones, 280 So.2d 431 (Fla. 1973), adopting the comparative negligence rule, declared that when the negligence of more than one person contributes to an accident, each should pay the proportion of total damages he has caused the other party. Id. at 439. However, in Lincenberg v. Issen, 318 So.2d 386 (Fla. 1975), receding (in the light of Hoffman v. Jones) from the rule of no contribution among joint tortfeasors, the court applied the then newly-enacted Section 768.31, Florida Statutes (1975) as the rule in Florida, holding that the full, joint, and several liability of joint tortfeasors to the plaintiff was retained, providing only for a contribution among them on a pro rata basis. The relative degrees of fault of the joint tortfeasors was not a factor to be considered under the statute in existence at the time of that decision. 318 So.2d at 393.
The prohibition against consideration of the relative degrees of fault of joint tortfeasors did not long remain the law, however, for in 1976 the contribution statute was amended to specifically provide that in determining pro rata shares for purposes of contribution, "the relative degrees of fault" of joint tortfeasors would be the basis for allocation of liability. Section 768.31, Florida Statutes, as amended, Chapter 76-186, Laws of Florida (1976).
Under the amended contribution statute, appellants here would be entitled to seek contribution from the decedent's employer, based upon the employer's relative degree of fault, except for the operation of Section 440.11, Florida Statutes. This statute provides immunity in behalf of an employer, as to an employee and any third party tortfeasor, for injuries to the employee covered by workers' compensation benefits. Section 440.11 "precludes an employer from being a designated a person `jointly or severally liable in tort for the same injury to person or property' as used in the contribution act." Seaboard Coastline Railroad Company v. Smith, 359 So.2d 427, 429 (Fla. 1978) (upholding the constitutionality of the section). Thus, there could have been no adjudication of liability against the employer in this suit even if the employer had been made a party  which it was not. We find no basis upon which appellants would be entitled to the relief they seek given the present status of the law of Florida with respect to the doctrine of joint and several liability. This court has recently rejected the argument that joint and several liability has been superceded by comparative negligence. Department of Transportation v. Webb, 409 So.2d 1061 (Fla. 1st DCA 1981).
Appellants recognize that Florida case law firmly establishes the principle that in fixing liability the negligence of a non-party tortfeasor cannot be apportioned. Model v. Rabinowitz, 313 So.2d 59 (Fla. 3rd DCA 1975), cert. den. 327 So.2d 34 (Fla. 1976); Souto v. Segal, 302 So.2d 465 (Fla. 3rd DCA 1974); Echeverria v. Barczak, 308 So.2d 633 (Fla. 3rd DCA 1975), cert. den. 321 So.2d 558 (Fla. 1975); Travelers Ins. Co. v. Ballinger, 312 So.2d 249 (Fla. 1st DCA 1975); and Davis v. Lewis, 331 So.2d 320 (Fla. 1st DCA 1976), cert. den. 348 So.2d 946 (Fla. 1977). They urge, however, that no Florida case has yet addressed the issue presented here, that is, the rights of a third party tortfeasor vis-a-vis the suing plaintiff, when the nonparty tortfeasor is immune from tort liability in connection with the occurrence causing the injuries. We agree that if Florida's contribution system were governed by "pure apportionment," appellants' contention that their liability should be reduced by the percentage of negligence attributable to the employer would have merit. However, "pure apportionment" was specifically rejected by the Florida Supreme Court in Lincenberg, 318 So.2d at 392, n. 2, and more recently by this court in Department of Transportation v. Webb, 409 So.2d 1061, 1063 (Fla. 1st DCA 1981). That the rule may be otherwise in other jurisdictions *169 does not persuade us to abandon the precedential rulings of this and other Florida courts. See, C. Heft & C. Heft, Comparative Negligence Manual, § 8.131, and § 3.160. See also, Pocatello Indust. Park Co. v. Steel West, Inc., 101 Idaho 783, 621 P.2d 399 (1980).
Finally, on the apportionment issue, we must reject appellants' alternative theory under which they argue that their liability should be reduced by the employer's proportionate share of total fault up to the amount of workers' compensation benefits paid. Even if that procedure were permissible, here it would not be feasible, because the employer was not a party to this proceeding, no effort was made to join the employer as a party, and there is no basis for a finding of the "employer's proportionate share of the total fault" as urged by appellants. In sum, the employer has not been found at fault in connection with the causation of the accident, and in our view there is no way in which the employer's "fault" can be adjudicated and factored into the contribution equation without substantially altering the "balancing" of rights and obligations in the employer-employee relationship that gives validity to the workers' compensation law. See, Carr v. Central Florida Aluminum Products, 402 So.2d 565 (Fla. 1st DCA 1981); Acton v. Fort Lauderdale Hospital, 418 So.2d 1099 (Fla. 1st DCA 1982); Chapman v. Dillon, 415 So.2d 12 (Fla. 1982).
AFFIRMED.
SHAW and JOANOS, JJ., concur.